437 So.2d 256 (1983)
STATE of Louisiana
v.
Kem WEST.
No. 82-KA-1655.
Supreme Court of Louisiana.
September 2, 1983.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William E. Tilley, Dist. Atty., Edwin L. Cabra, Asst. Dist. Atty., for plaintiff-appellee.
Louis J. Cosenza, Leesville, for defendant-appellant.
MARCUS, Justice.
Kem West was indicted by the grand jury for second degree murder of William James Calcote in violation of La.R.S. 14:30.1.[1] After *257 trial by jury, defendant was found guilty as charged and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. On appeal, he relies on nine assignments of error for reversal of his conviction and sentence.[2]

ASSIGNMENTS OF ERROR NOS. 1, 2, 3, 4, 5, 14, AND 15
In these assignments of error, defendant contends the trial judge erred in sustaining the state's objection to the introduction of prior contradictory statements made by a state witness to four defense witnesses based on the grounds of hearsay and that he had not laid a proper foundation for introduction of these statements on cross-examination, in ruling that this same witness was not hostile when called by him and in not allowing him to impeach the witness by his prior contradictory statements, in denying his proffer of the testimony of these four witnesses, and in not postponing the imposition of sentence to give defendant additional time to further brief these issues in support of his motion for a new trial.
At trial, the state called David Wayne Hart as a witness. Hart, pursuant to a plea bargain in which he agreed to testify in this case, had pled guilty to manslaughter of William "Billy" Calcote, the same victim for which defendant was being prosecuted, and had been sentenced to serve five years at hard labor. At the time of trial, he had served two years of the sentence and had been released from custody. On direct examination, Hart apparently[3] testified that defendant had committed the murder and that he (Hart) had taken no part in the actual killing of the victim. Hart was extensively cross-examined by defendant. During cross-examination, the following colloquy took place:
Q. Did you ever tell anyone that you'd killed him [Calcote]?
A. No sir.
Q. You never told anyone that you killed him?
A. No sir.
. . . .
Q. Did you ever meet a man named Charles Carstarphsen?
A. Yes sir.
Q. Did you ever tell Charles Carstarphsen that you had murdered Billy Calcote?
A. No sir.
Q. Did you ever meet a man named Ronnie Brogden while you were in jail?
A. Yes sir.
Q. Did you ever tell Ronnie Brogden that you had murdered Billy Calcote?
A. No sir.
Q. You met a man named David Cryer when you were in jail?
A. No sir.
. . . .
Q. Then I must assume that you never told him ...
A. Right.
Q.... that you had murdered Billy Calcote?
A. Yes sir.
Q. Did you know a man in jail named Joel Vernon?
A. Yes sir.
The following day after the state had rested, defendant called Hart as his first witness. Hart was asked: "Did you ever tell Joel Vernon that you had killed ...." At this point, the state objected on the ground that this was a leading question. Defendant argued that the witness by his previous testimony demonstrated his hostility under La.R.S. 15:487. The trial judge ruled that Hart was now defendant's witness *258 and that a proper showing of hostility had not been made. Hart was further examined by defendant:
Q. Did you kill Billy Calcote?
A. No sir.
Q. Who killed Billy Calcote?
A. Mr. West.
Defendant then argued that this testimony, in itself, demonstrated Hart's hostility and he should be allowed to impeach his credibility through the use of prior contradictory statements. The trial judge ruled that "it may be that you can show hostility, or it may be that hostility will be shown... but to this moment, you have not shown hostility within the requirement of the law." Defendant asked no further questions of Hart and dismissed him as a witness.
Thereafter, defendant called the following witnesses: Joel Vernon, convicted of second degree murder and serving a life sentence; Ronald Brodgen, convicted of second degree murder and serving a life sentence; Charles Carstarphsen, convicted of armed robbery and serving twenty-five years; and David Cryer, convicted of burglary and theft and serving about seventeen months for the two convictions. Each of these witnesses testified, over the state's objection, that Hart had told them that he (Hart) had killed Billy Calcote. The state objected to any further testimony by these witnesses relative to what Hart may have told them on the ground that since defendant had not laid a proper foundation during the cross-examination of Hart under La. R.S. 15:493 or made a proper showing of hostility when he called Hart as his own witness, such statements would be inadmissible hearsay. The objection was sustained by the trial judge. However, Vernon was permitted to testify that Hart told him, "Mr. West and the female remained in the automobile." Carstarphsen also testified that Hart said that, "he killed the guy. That Kem West didn't kill him."
As defendant admits in his brief to this court, the statements he sought to introduce in evidence were clearly hearsay. However, he argues that the United States Supreme Court in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), authorized the introduction of such hearsay testimony if the testimony "bore persuasive assurances of trustworthiness." We need not decide whether Chambers mandates the introduction of such statements as we do not find that the hearsay testimony defendant sought to introduce met the standard set forth in Chambers. In the instant case, unlike Chambers, the persons to whom Hart made the statements were not life-long friends nor were such statements made shortly after the murder occurred. Rather, the statements were made to persons who had committed serious crimes while Hart was in jail. Further, the statements were not made immediately but long after the commission of the crime. Hence, the trial judge did not err in ruling that the statements were inadmissible hearsay.
However, these statements could have been introduced to impeach the credibility of Hart. La.R.S. 15:493 permits the credibility of a witness to be impeached by proof of any statement made contrary to his testimony at trial. This statute provides:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
Under this statute, proof that the prior inconsistent statement was made can be used for impeachment purposes only, not to show the truth of its content. State v. Mosley, 360 So.2d 844 (La.1978). The requirement of this statute that a defendant must lay a proper foundation for the admission of a prior contradictory statement has been strictly applied. See, e.g., State v. *259 Heard, 408 So.2d 1247 (La.1982); State v. LaFleur, 398 So.2d 1074 (La.1981). The rationale for such a strict construction is to obviate surprise and to let the witness either deny or explain the inconsistency. State v. Heard, supra.
In the instant case, defendant did not lay the foundation required under La. R.S. 15:493 for the admission of prior contradictory statements during his cross-examination of Hart. He did not call Hart's attention to the time, place or circumstances of the alleged statements made to the four witnesses in connection with the statement made by Hart that he murdered the victim and nothing at all was asked as to whether Hart told these witnesses that defendant did not participate in the commission of the crime. Hence, although the trial judge was lenient in permitting these witnesses to testify that Hart had told them that he murdered the victim, he did not err in limiting the use of prior contradictory statements to this question.
Nor do we consider that defendant was improperly precluded from making a showing of hostility when he called Hart as his own witness. Once a witness has been examined and cross-examined as a state witness, the right of the defendant to recall the witness in the presentation of his defense is subject to the limitation that the recall places the witness in the position as though he had never been called before in the case. He then becomes a defense witness. State v. Guillory, 373 So.2d 133 (La. 1979).
La.R.S. 15:487 provides:
No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements. (Emphasis added.)
Although hostility is not defined by this statute, this court has suggested that hostility turns on a showing that the witness' interest is on the side of the opposite party to such an extent that he or she is unlikely to give a true account of the transaction. State v. Welch, 368 So.2d 965 (La.1979); State v. Willis, 241 La. 796, 131 So.2d 792 (1961). Hostility has also been shown where the witness gives evasive and contradictory answers. State v. Edwards, 419 So.2d 881 (La.1982); State v. Bradford, 367 So.2d 745 (La.1978).
In the instant case, Hart merely testified that he had not killed Billy Calcote and that defendant did. There was no showing that Hart's interest was on the side of the state to such an extent that he was unlikely to give a true account of the events which led to the commission of the crime. To the contrary, Hart's plea bargain was conditioned on his agreement to testify truthfully in this case. In addition, at the time of the trial, he had served two years of his sentence and had been released from custody. Nor were his answers evasive or contradictory. Defendant was not precluded by the trial judge's ruling from further establishing Hart's hostility. He voluntarily chose to curtail this line of questioning. Hence, we do not find that the trial judge erred in finding that defendant had not established that Hart was hostile and in refusing to permit defendant to impeach his own witness through the use of prior contradictory statements.[4]
*260 In any event, as previously noted, each of the four defense witnesses did testify that Hart told them that he (Hart) had murdered the victim. In addition, Vernon was permitted to testify that Hart told him defendant and the female had remained in the automobile during the murder. Moreover, the jury was aware that Hart had pled guilty to the manslaughter of the same victim for which defendant was being prosecuted and that as a condition of his plea bargain he had agreed to testify in this case. Hence, it is doubtful that the testimony of the four defense witnesses, all of whom had been convicted of serious crimes for which they were serving long prison sentences, that Hart told them about defendant's role in the murder would not have added much to that which the jury already knew. This is particularly true since the evidence would have been admitted only for the purpose of impeaching Hart and not to show the truth of its content. Under the circumstances, we do not consider the failure to permit introduction of Hart's alleged prior contradictory statements by these witnesses to be of any particular significance.
Having found that the testimony of the four defense witnesses was inadmissible, we do not find that the trial judge's denial of defendant's proffer of this testimony was in error. Nor do we find that the trial judge abused his discretion in denying a postponement of the imposition of sentence to give defendant additional time to further brief these issues in support of his motion for a new trial. La.Code Crim.P. art. 853.
Assignments of Error Nos. 1, 2, 3, 4, 5, 14 and 15 are without merit.
We find that neither of the remaining assignments of error presents reversible error, nor do they involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise part of the record in this case.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
CALOGERO, J., concurs.
DIXON, C.J., concurs with reasons.
DENNIS, J., concurs for reasons assigned by Dixon, C.J.
LEMMON, J., dissents.
DIXON, Chief Justice (concurring).
I respectfully disagree with the majority in its treatment of the prior inconsistent statements. Confessions are admissible. The state's witnesses were hostile. Defendant should be permitted to cross-examine state's witnesses either during the state's case in chief, or the defense's case.
Nevertheless, the errors appear to be harmless; therefore I concur.
NOTES
[1] Defendant was originally indicted by the grand jury for first degree murder. Subsequently, a new indictment was returned by the grand jury charging defendant with second degree murder. The first indictment was dismissed. After a trial by jury, he was found guilty as charged and was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal, this court reversed his conviction and set aside his sentence on the ground that a statement made by defendant to the police and introduced at trial was given in violation of his constitutional rights to silence and counsel. State v. West, 408 So.2d 1114 (La.1982).
[2] Defendant designated fifteen errors to be urged on appeal in his assignment of errors filed in the district court. However, he has neither briefed nor argued Assignments of Error Nos. 7, 9, 10, 11, and 12; therefore we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[3] Defendant has only designated those portions of the record for review by this court which relate to his assignments of error filed in the district court. Hence, we do not have the benefit of the testimony of David Wayne Hart on direct examination by the state.
[4] We find the case of Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), relied on by defendant in support of this argument, is clearly distinguishable from the instant case. In Chambers, the court concluded "that the exclusion of this critical evidence [the statement of a person named McDonald that he had murdered the victim] coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any dimunition in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial and procedures." (Emphasis added.) In the instant case, defendant was permitted to cross-examine Hart and Hart's statements that he had killed Billy Calcote were presented to the jury.