NORRIS, Judge.
The defendant, Charles Scallion, was charged by bill of information with simple burglary of three homes in Franklin Parish, LSA-R.S. 14:62. After pleading not guilty, he was tried by a six-man jury and found guilty as charged. The trial judge sentenced him to six years at hard labor on each count, to be served concurrently. Scallion now appeals, raising two assignments of error:
(1) The trial court erred in refusing to let a defense witness testify to a prior inconsistent statement made by the state’s chief witness, and
(2) The trial court erred in sustaining the state’s objection to the relevance of questions designed to show bias or prejudice on the part of the state’s chief witness.
For the reasons expressed, we affirm.
The prosecution arises from a string of burglaries that occurred in rural Franklin Parish in the early months of 1984. The victims all testified that their houses had been broken into and ransacked and that numerous household items had been taken. The stolen goods included some large items such as electric heaters, a washer and dryer, bedding, a refrigerator, tables and chairs, and pots and pans. All the complainants testified they did not know Scallion and they had not given anyone authority to enter the houses where the offenses occurred.
In order to link Scallion with the crimes, the state presented the testimony of Claude Ervin, Scallion’s 30-year old friend and co-defendant in the case. Ervin had pled guilty to the same three counts of simple burglary and was awaiting sentencing at the time of Scallion’s trial. He testified *241 that in December 1983 he and his wife and five children moved to Louisiana from Missouri where he had known Scallion for several years. Scallion had apparently preceded him in coming to Louisiana. The Ervins stayed with the Scallions for about two weeks before finding a place of their own. Claude worked a few weeks with Scallion for Scallion’s employer, Mr. Weeks. Claude stated that Scallion assisted him in each of the three burglaries. He gave incriminating details. On the morning after the third burglary, Claude and his family packed up and moved back to Missouri. He was arrested there on the instant offenses a few weeks later. He admitted on direct examination that he and Scallion had been previously convicted of a burglary they collaborated on in Lilbourn, Missouri.
Claude’s wife, Lily Ervin, testified that they lived in a house behind the Scallions. She said she was home after each burglary. She believed burglaries had taken place when her husband and Scallion would return home with truckloads of household goods. She denied all insinuations that she directly participated in the burglaries.
Scallion’s defense was that Claude and Lily, and not himself, had committed the crimes. He depicted the Ervins as destitute newcomers who desperately needed the necessities of life. They turned to burglary to furnish their house and get electric heaters to make the winter weather tolerable. Scallion also sought to show that he could not have participated in the crimes because his right leg was disabled. He admitted, however, that his social security disability benefits had been discontinued in February of that year.
Scallion’s brother, Larry, also testified. He knew Claude and worked with him, but most of his testimony was blocked by objections from the state. Scallion’s wife, Wanda, testified that her husband never brought home any household goods that would have led her to think there was a burglary.

Assignment No. 1

By this assignment Scallion contends that the trial court erred in limiting his efforts to impeach the credibility of the state’s chief witness and co-defendant, Claude Ervin. Because Ervin provided the link between Scallion and the crimes, his testimony was crucial; Scallion contends that limiting his attempt to impeach Claude’s testimony denied him a fair trial.
On direct examination, Claude implicated Scallion in each of the three burglaries. During the defendant’s case, the defense asked Larry Scallion, the defendant’s brother, “Has Claude ever told you why he told the police that * * * Charles helped him?” R.p. 135. The state objected, claiming the question called for hearsay and arguing that the defense did not lay a foundation for introducing a prior inconsistent statement. The defense’s motive was to show that Claude fingered the defendant as part of a plea bargain in which Claude would receive a light sentence, as light as six months. R.p. 89. Claude admitted that upon his arrest, he had not mentioned Scallion’s part in the crimes. After sitting in jail for a week or two, he reported that Scallion had helped him, and his bond was then reduced from $12,000 to $2,500. Claude insisted, however, that his trial testimony was truthful. The defense wanted to use Larry’s testimony to impeach it.
A prior inconsistent statement is not admissible in a criminal trial unless a proper foundation has been laid. LSA-R.S. 15:493 provides:
§ 493. Foundation for proof of contradictory statement
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making *242 such statement, evidence that he did make it is admissible.
The statutory requirement that a defendant must lay a proper foundation for the admission of a prior inconsistent statement is strictly applied. State v. West, 437 So.2d 256 (La.1983); State v. Heard, 408 So.2d 1247 (La.1982). The rationale for such a strict construction is to avoid surprise and to let the witness deny or explain the apparent inconsistency. State v. Heard, supra; Conrad v. Griffey, 57 U.S. (16 How.) 38, 14 L.Ed. 835 (1853).[1]
We have carefully read Claude’s testimony. The defense never asked him if he had made any statement to Larry Scallion. Without this foundation, which could have been made with a few simple questions, the contested question to Larry Scallion was improper. If Larry was going to testify that Claude made a prior inconsistent statement, Claude should first be given the opportunity to explain it. The trial court was correct to sustain the state’s objection.
In support, Scallion cites the civil case of Calvert Fire Ins. Co. v. Grotts, 136 So.2d 836 (La.App. 4th Cir.1962), writ denied (not reported) for the proposition that a statement against interest is admissible without a foundation. In Calvert, the proffered statement was a signed letter. The defendant acknowledged on the witness stand that he had written the letter. This plainly amounts to exactly the form of foundation that was lacking in the instant case. Far from supporting Scallion’s position, Calvert shows its weakness by underscoring how a proper foundation should be laid.[2]
We finally observe that the state was sensitive to the potential inconsistency of its witness’s testimony. On direct examination, the prosecutor asked Claude why he had changed his mind and decided to implicate Scallion. The defense objected twice and effectively kept out precisely the same information it wanted to adduce through Larry Scallion. R.p.p. 83, 84. Furthermore, Larry Scallion’s statement would have been admissible for impeachment purposes only, not for the truth of the matter asserted. State v. West, supra. Under the circumstances, the excluded testimony would not have affected Scallion’s substantial rights. LSA-C.Cr.P. art. 921.
This assignment does not present reversible error.

Assignment No. 2

By this assignment Scallion claims the trial court improperly refused to let him pursue, through cross-examination of Claude Ervin, the witness’s bias or prejudice. Defense counsel was asking questions intended to show that Claude might have changed his story and falsely implicated Scallion only to save his wife Lily from prosecution. Claude testified that he and his wife had five children and that he loved her; he insisted that she had done nothing to merit imprisonment and that he would not lie just to keep her out of jail. The state then objected to the relevance of the questioning and the trial court sustained it.
Under the general rule, relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. LSA-R.S. 15:441. The defense is nevertheless permitted to question a witness’s bias. LSA-R.S. 15:492 provides:
*243 § 492. Bias, interest, or corruption of witness; questions concerning particular acts
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
Thus the witness’s bias or prejudice is relevant and the influence of pending criminal charges is recognized as a valid area of cross-examination. State v. Rankin, 465 So.2d 679 (La.1985); State v. Harrison, 484 So.2d 882 (La.App. 1st Cir.1986), writ denied 488 So.2d 688 (La.1986).
We find from the record that the defendant exhausted the line of questioning he was pursuing with Claude. Claude had plainly asserted that his wife did not participate in the crimes and that he would not fabricate any story just to keep her from prosecution. It is difficult to see how the line of questioning could have continued any further, short of badgering; indeed, Scallion has not shown on appeal any additional questions he would have asked. The facts do not support Scallion’s claim of improperly abridged cross-examination.
Scallion finally argues that the trial court denied him confrontational rights under the federal and state constitutions. USCA-Const. amd. VI; LSA-Const. Art. 1 § 16. The constitution guarantees effective cross-examination, not answers that support the defendant’s case. Delaware v. Fensterer, — U.S. -, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Defense counsel had adequate opportunity to expose bias on the part of Claude Ervin and, in fact, he engaged in a wide and thorough cross-examination. There was no denial of constitutional rights.
This assignment does not present reversible error.
For the reasons expressed, the conviction is affirmed.
AFFIRMED.

. The court explained,
"[A] witness cannot be impeached by showing that he had made contradictory statements from those sworn to, unless on his examination he was asked whether he had not made such statements to the individuals by whom the proof was expected to be given. * * This rule is founded upon common sense, and is essential to protect the character of a witness. His memory is refreshed by the necessary inquiries, which enables him to explain the statements referred to, and show they were made under a mistake, or that there was no discrepancy between them and his testimony."
57 Ü.S. at 46-47, 14 L.Ed. at 46.

. An example of a criminal case where the foundation was properly laid is State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.1984), writ denied 449 So.2d 1345 (La.1984).