446 So.2d 1278 (1984)
STATE of Louisiana, Appellee,
v.
Charles CODY, Ronald L. Harvey and Oscar Edwards, III, Appellants.
No. 15837-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Rehearing Denied March 28, 1984.
*1281 R. Wayne Smith and George B. Holstead, Ruston, Attys., for appellant, Charles Cody.
Edward L. Henderson, Grambling, for appellants, Ronald Harvey and Oscar Edwards, III.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before HALL and MARVIN, JJ., and CULPEPPER, J. Pro Tem., JJ.
HALL, Judge.
The defendants, Charles Cody, Ronald L. Harvey, and Oscar Edwards, III, appeal their convictions for armed robbery in violation of LSA-R.S. 14:64, as well as the *1282 sentences imposed upon all three defendants. Defendant Cody is represented by separate defense counsel from defendants Harvey and Edwards.
On appeal, defendant Cody filed 10 assignments of error:
(1) and (2) The trial court erred in overruling defendant's motion to quash in that he was not arraigned within 30 days of the filing of the indictment;
(3) The court erred in denying the motion to suppress physical evidence;
(4) The trial court erred in refusing to grant defendant Cody's challenge for cause for three prospective jurors; Sandra Kirkland Swift, Brooks Bryant, and Glen Allen Scriber;
(5) The court erred in granting the state's challenge for cause to prospective juror, Florida Jones;
(6) The court erred in allowing Harvey Raymond Harris to testify concerning hearsay evidence received by him from a police dispatch over the objection of defendant;
(7) The court erred in allowing a witness for the state to testify concerning a pretrial identification when the witness cannot make an in-court identification;
(8) The court erred in allowing hearsay testimony of Inspector Roland Kaye;
(9) The court erred in admitting into evidence the photographic lineup of the defendant; and
(10) The court erred in imposing an excessive sentence.
On appeal, defendants Harvey and Edwards filed 11 assignments of error:
(1) and (2) The trial court erred in overruling defendants' motion to quash in that defendants' were not arraigned within 30 days of the filing of the indictment;
(3) The court erred in denying defendants' motion to suppress physical evidence;
(4) The trial court erred in refusing to grant defendants' challenge for cause as to the following prospective jurors; Sandra Kirkland Swift, Brooks Bryant, and Glen Allen Scriber;
(5) The court erred in granting the state's challenge for cause to prospective juror, Florida Jones;
(6) The court erred in allowing Harvey Raymond Harris to testify concerning hearsay evidence;
(7) The court erred in allowing a witness for the state to testify as to a pretrial identification even though the witness could not make an in-court identification;
(8) The court erred in allowing Roland Kaye to testify concerning hearsay testimony attained from a co-defendant, Xavier Webb;
(9) The court erred in admitting the photographic lineup;
(10) The court imposed an excessive sentence; and
(11) There was insufficient evidence by which to convict defendants Harvey and Edwards with armed robbery.
Defendant Cody has failed to argue Assignment of Error No. 5 in brief. Defendants Harvey and Edwards failed to argue Assignments of Error Nos. 1 through 7, and 9. Assignments of error made but not briefed or argued on appeal are considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976).
Facts
The testimony of the bank employees, police officers, investigators, other witnesses, and physical evidence presented at trial established the following facts surrounding the commission of the offense.
At approximately 9:30 a.m. on July 1, 1982, two men wearing jogging suits and ski masks, entered the University Branch of the Ruston State Bank. The two men held the bank employees and customers at bay while stuffing money into bags. The two men made away with $76,295. At the time of the robbery, several persons in nearby locations observed what was taking place and notified the Ruston Police Department. The police were able to apprehend *1283 one suspect who gave the police information relative to the offense. Using that information, the Ruston Police Department issued a nationwide alert naming the three defendants as the suspects in the robbery.
On the night of June 30, 1982, prior to the robbery, Officer James G. Franklin of the Ruston Police Department, stopped the three defendants for a traffic violation. At that time Officer Franklin made a note that the three occupants of the car were driving a yellow Cadillac bearing Indiana license plates and additionally noted the number on the license plate.
At approximately 10:00 p.m. on the evening of July 1, 1982, a Missouri highway patrolman made a routine traffic stop of a yellow Cadillac on Interstate 57 in New Madrid County, Missouri. The driver of the vehicle, Oscar Edwards, was issued two citations and all three of the occupants of the car were taken to the New Madrid Sheriff's Department where Edwards posted a cash bond. The officers involved in this incident had not yet received the bulletin concerning the defendants or the vehicle. The money that the defendants used to post the cash bond was, in fact, money stolen from the Ruston State Bank. At approximately midnight on July 1, 1982, the Missouri Highway Patrol received the bulletin and recognized the defendants' names and the vehicle description. The Missouri Highway Patrol then reported that the suspects had been in Missouri and had requested directions for Chicago, Illinois. This information was relayed to the Illinois state police.
At approximately 3:00 a.m. on July 2, 1982, an officer of the Illinois state police was on patrol in the area of Matoon, Illinois, on Interstate 57. Officer Rollings of the Illinois state police had been advised to be on the lookout for a yellow 1977 Cadillac with Indiana license plates. In addition, he was given the license number of the vehicle. After observing a vehicle which fit the description, Officer Rollings stopped the vehicle and arrested all three defendants. The defendants were then transferred to the Coles County, Illinois jail, and the defendants' vehicle was towed to the Matoon Police Department garage. After the vehicle had been impounded, the Illinois state police determined that the registered owner of the vehicle was Ronald Harvey, one of the defendants. Officer Shields of the Illinois state police obtained a signed consent from defendant Harvey granting the police permission to search his vehicle. As a result of the search, the police officers found $65,000 in cash, a Smith & Wesson revolver, and receipts from the Ruston State Bank. At trial, it was determined that the money found in the defendants' vehicle did in fact come from the Ruston State Bank. The defendants were then extradicted to the state of Louisiana to stand trial. The trial resulted in verdicts of guilty as charged for the crime of armed robbery against all three defendants.
Defendant CodyAssignments of Error Nos. 1 and 2
Defendant Cody asserts that the trial court committed error by denying his motion to quash the indictment on the basis that the defendant had not been arraigned within 30 days of the filing of the indictment pursuant to LSA-C.Cr.P. Art. 701(C).
Defendant Cody was indicted by the Lincoln Parish Grand Jury on July 12, 1982. The Indigent Defenders Office was appointed to represent a co-defendant, Xavier Webb, and Cody. On July 30, 1982, arraignment was set for Cody. At that time the attorney from the Indigent Defenders Office informed the court that he had a conflict of interest between the two defendants and requested that he be relieved of his appointment for the representation of defendant Charles Cody. The attorney's request was granted and Cody was not arraigned at that time. On October 28, 1982, defendant Cody's newly-appointed defense counsel, R. Wayne Smith, entered a motion to quash the indictment. A hearing was immediately held at which time the court denied defendant's motion to quash. On the same day Cody was then arraigned and pled not guilty.
LSA-C.Cr.P. Art. 701 C. provides:

*1284 "Upon filing of a bill of information or indictment, the district attorney shall set the matter for arraignment within 30 days unless just cause for a longer delay is shown."
Since it is apparent that Cody was not arraigned within 30 days, it must be determined whether just cause was shown for the delay. The record indicates that the state failed to arraign Cody for approximately a three-month period of time. The cause shown by the state for the delay was the fact that a new defense counsel was appointed for defendant Cody. Appointment of new defense counsel would likely constitute just cause for an additional 30-day delay; however, there appears to be no just cause for the 90-day delay in the present case.
Having determined that the state failed to comply with LSA-C.Cr.P. Art. 701 C., this court must determine the proper remedy, if any. The legislature provided no remedies for failure to comply with the period for arraignment under LSA-C.Cr.P. Art. 701 C. as it did for failure to comply with the time for filing an indictment or information or for commencement of trial under Article 701 B. and D. LSA-C.Cr.P. Art. 701 C. is one part of article 701 relating to the defendant's right to a speedy trial. Consequently, this court will review the denial of a right of arraignment within 30 days under the factors considered by the Louisiana Supreme Court in evaluating speedy-trial claims prior to the 1981 amendment to Article 701. The Supreme Court has listed the following four factors to be considered in each particular case: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant, such as the possible impairment of the presentation of the accused defense. State v. James, 394 So.2d 1197 (La.1981); State v. Reaves, 376 So.2d 136 (La.1979). We consider defendant Cody's contentions in light of these guidelines.
There is no question but that the delay in the instant case appears to be inordinate. Article 701 C. provides for a 30-day period. The state failed to seek arraignment of defendant Cody until defendant Cody filed a motion to quash some 90 days later.
The next factor to be considered is the reason for the delay. Clearly, the appointment of new defense counsel would justify an additional 30-day delay. However, there appears to be no just cause shown for a 90-day delay.
The next factor is the defendant's assertion of his right to arraignment. The record in the present case does not reveal that the defendant ever asserted his right for arraignment at any time prior to his filing of the motion to quash the indictment. It therefore appears that the defendant did not diligently assert his right.
Finally, the court will consider the prejudice to the defendant such as the possible impairment of the presentation of his defense. There was no showing made that the defendant was in any way prejudiced by the delay. The defendant's trial did not begin until February 10, 1983. It appears that defendant Cody had ample opportunity to prepare his defense in the present case. It therefore appears that the defendant was not prejudiced by the state's failure to timely arraign the defendant.
Having found that the defendant did not timely assert his right to arraignment and that the delay did not prejudice the defendant's ability to present a defense, this court has determined this assignment of error to be without merit.
Defendant CodyAssignment of Error No. 3
Defendant Cody assigns as error the trial court's denial of his motion to suppress physical evidence. Cody alleged in his motion to suppress that all physical items seized by law enforcement officers in the trunk of the 1977 Cadillac automobile in which he was riding should be suppressed as evidence because the search was made without a search warrant, and thus, was unlawful and unconstitutional. In conducting the search of the automobile, the state relied exclusively upon the consent to *1285 search given by defendant Harvey. The record indicates that defendant Harvey was the owner of the vehicle and had given the police consent to search the automobile.
There are two issues which defendant Cody raises concerning the consent to search: (1) whether the consent by defendant Harvey was given freely and voluntarily; and (2) whether defendant Harvey had the capacity and/or authority to give consent to search for the other defendants.
Since defendant Cody was not the owner of the vehicle searched, it must be determined whether defendant Cody has standing to question the voluntariness of defendant Harvey's consent to search of his automobile. The state does not question Cody's standing to raise this issue. Nevertheless, the Louisiana Constitution of 1974 Art. 1, § 5 provides "any person adversely affected by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court." As a result, it appears that defendant Cody has standing to raise the question of defendant Harvey's voluntariness of consent even though he does not have a proprietary interest in the searched automobile.
A search conducted without a warrant is presumed unreasonable unless it is justified by one of the narrowly defined exceptions to the warrant requirement. State v. Hernandez, 410 So.2d 1381 (La. 1982). In absence of a warrant, a search conducted pursuant to a valid consent is constitutionally permissible. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, where the state seeks to rely upon consent to justify lawfulness of search, it has the burden of proving that consent was in fact, freely and voluntarily given. State v. Winn, 412 So.2d 1337 (La.1982). The test to determine consent, either custodial or noncustodial, is the same. Voluntariness is a question of fact to be determined from all the surrounding circumstances, and custody, like the subject's knowledge of the right to refuse, is only one factor that should be taken into account. State v. Ludwig, 423 So.2d 1073 (La.1982); State v. Linkletter, 345 So.2d 452 (La.1977). In such a factual determination, the trial judge's conclusions on credibility are entitled to great weight. State v. Tennant, 352 So.2d 629 (La.1977).
The principle evidence of defendant Harvey's consent for the search is contained in State's Exhibit # 1, which is a consent to search form, supported by the testimony of an Illinois State Police Officer. In essence, the form states that defendant Harvey, having been informed of his constitutional right not to have a search made of his vehicle without a search warrant, and of his right to refuse to consent to a search authorizes officers of the Illinois State Police to conduct a search of his vehicle located at the Matoon Police Department. Further, the form states that the officers are authorized to seize and take from the vehicle any fruits of a crime or any instruments, articles, or things which have been used in the commission of a crime. The form concludes that the written permission is given voluntarily and without threats or promises of any kind. The bottom of the form bears a description of defendant Harvey's vehicle along with his signature. In finding that defendant Harvey had in fact consented to the search, the trial court stated that "the testimony is that the consent was read to him and was presented in front of him so that he had the opportunity to read it himself and the testimony also that he signed the consent. Now, he gave the officers all indications that he understood what he was doing and the officers testified that they knew, they advised him that he did not have to sign that the effect of this document was to permit them to search without a warrant." The Court further stated "the court feels that there was probable cause to secure the consent and there is no evidence that the consent was not signed freely and voluntarily and in fact the contrary is evidenced." The trial court's finding is supported in the record by the testimony of Officer Shields of the Illinois State Police and the signed consent form.
*1286 The next issue on the motion to suppress which the defendant Cody raises is whether defendant Harvey had the capacity and authority to validly give a consent to search for all three of the occupants of the vehicle. Consent to search is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); State v. Bodley, 394 So.2d 584 (La. 1981). The common authority stems not so much from one's property interests, but rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their numbers might permit the common area to be searched. U.S. v. Matlock, supra; State v. Bodley, supra. In the case of State v. Smith, 418 So.2d 515 (La.1982), the Supreme Court stated that a owner of a vehicle has the authority to consent to the search of his vehicle since he possesses common authority over the car.
It is not disputed that defendant Harvey did in fact own the car which was searched. At the time that the consent to search form was signed by defendant Harvey, the Illinois State Police had a statement from defendant Harvey that he was the owner of the vehicle supported by a license plate check which was done to determine the registered owner of the vehicle.
It appears that defendant Harvey did give a free and voluntary consent to search of his automobile. In fact, defendant Harvey in his brief does not challenge the voluntariness of his consent. It also seems apparent that since defendant Harvey was the owner and operator of the vehicle, he had the right to permit the search in his own right and the others assumed the risk that the common area might be searched. Consequently, this assignment of error is without merit.
Defendant CodyAssignment of Error No. 4
Defendant Cody asserts that the trial court's refusal to grant a challenge for cause to the prospective jurors Sandra Kirkland Swift and Glen Allen Scriber, was reversible error. The State asserts in its brief that defendant Cody only used eleven of his twelve peremptory challenges. However, a review of the jury voir dire reveals that counsel for defendant Cody did excuse 12 jurors peremptorily. A defendant who has used all peremptory challenges is entitled to complain of any alleged error in denying challenge for cause as to any prospective jurors. State v. Heard, 408 So.2d 1247 (La.1982). The trial judge is vested with broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse of discretion or a clear showing of error. State v. Sugar, 408 So.2d 1329 (La.1982); State v. Francis, 403 So.2d 680 (La.1981). To establish reversible error, the defendant need only show that the trial judge erred in refusing to maintain the challenge for cause and that the accused exhausted all of his peremptory challenges; he need not make an additional showing of injury resulting from the court's action by forcing him to accept challenged jurors. State v. Sylvester, 400 So.2d 640 (La.1981).
Defendant Cody asserts that prospective juror Glen Allen Scriber should have been excused for cause in that the juror believed the defendants were guilty. Defendant Cody makes this assertion on the basis of a question directed towards Mr. Scriber asking whether he had any opinion formed as to the guilt or innocence of the accused. Mr. Scriber responded, "right now, I feel like, in my mind yes, I feel like they would probably be innocent. I mean, guilty." At that point, defense counsel challenged for cause. The trial judge then asked Mr. Scriber whether he could put those things out of his mind and abide by the law of the *1287 case, and give the defendants the presumption of innocence. Mr. Scriber responded "yes, if I was picked as a juror, I would, you know, I would weigh the evidence and cast my vote according to the way the evidence was."
Defendant Cody also asserts that Mr. Scriber admitted that the defendant would have to present evidence to overcome his preconceived notions as to the guilt of the defendant. The basis of this assertion comes from an affirmative response of Mr. Scriber to the question "wouldn't we have to overcome your present thoughts and ideas at the present time that you admit that you have." Defense counsel then again challenged for cause. The court then questioned Mr. Scriber once again, and asked Mr. Scriber if he could lay aside these opinions and render a fair and impartial verdict based strictly on the law and evidence that you hear in the courtroom. Mr. Scriber responded in the affirmative. The trial court refused to grant defendant's challenge for cause. Counsel for defendant Cody exercised a peremptory challenge against Mr. Scriber.
Defendant Cody challenged juror Sandra Kirkland Swift for cause on the basis that she was unable to state with certainty and without hesitation that she would follow the instruction of the court concerning the 5th Amendment privilege against self-incrimination. Additionally, defendant Cody asserts that Mrs. Swift acknowledged that she had a preconceived notion as to the guilt of the defendants. After extensive questioning by counsel, the trial court then questioned Mrs. Swift. The trial court informed Mrs. Swift that it would charge her that the defendant is presumed to be innocent until he has been proven guilty beyond every reasonable doubt, the State of Louisiana has the burden of proving that guilt. Additionally, the trial court told Mrs. Swift that if the defendant declines to take the witness stand and testify, she should not let that fact enter into her deliberation or consideration of the evidence but she should decide the verdict based strictly on the evidence that has been presented to you in court. Mrs. Swift responded that she understood. The Court then asked Mrs. Swift that "if the defendant does not testify, can you put this completely out of your mind and I want a positive clear answer, can you put that completely out of your mind and weigh the evidence that you hear from the witness stand and from that and that alone, decide the defendant's guilt or innocence or any of the defendant's guilt or innocence?" Mrs. Swift answered affirmatively. The trial court refused defendant Cody's challenge for cause; counsel for defendant Cody exercised a peremptory challenge against Mrs. Swift.
Defendant Cody submits that the challenges for cause as to each of the prospective jurors should have been granted pursuant to LSA-C.Cr.P. Art. 797(2) and (4).
"Art. 797. Challenge for cause
"The state or the defendant may challenge a juror for cause on the ground that: ...
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;...
"(4) The juror will not accept the law as given to him by the court;...."
A juror is not found to be partial when he expresses an opinion or impression as to the guilt or innocence of the defendant, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence. LSA-C. Cr.P. Art. 797(2); State v. Bates, 397 So.2d 1331 (La.1981). In Bates, the Louisiana Supreme Court found that the trial court did not abuse its discretion in denying defendant's challenge for cause of a prospective juror, who on voir dire indicated that she felt that an accused should testify, but after counsel's explanation said that she realized it was defendant's constitutional right to remain silent and that she would not hold such silence against defendant; *1288 and who also raised some doubt about her understanding in one of the elements of the crime with which defendant was charged but said she could accept the law as provided by the court. Further, the Court in Bates stated that a challenge for cause is not warranted where a juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently upon further inquiry or instruction by the Court has demonstrated the ability and willingness to decide the case impartially according to the law and evidence.
In State v. Heard, supra, the Supreme Court again stated that a challenge to a juror for cause is often unwarranted where a prospective juror at first expresses opinions prejudicial to defendant but upon further inquiry demonstrates ability and willingness to decide the case impartially by listening to the evidence and following the trial court's instructions.
Applying the jurisprudence to the facts in the present case indicates that the trial judge did not abuse his wide discretion. Both prospective jurors did initially express views which were prejudicial to the defendants. However, upon extensive questioning by the trial court, both prospective jurors stated that they would follow the instructions which the trial court gave them and base their verdict strictly on the evidence presented in court. Therefore, this assignment of error is without merit.
Defendant CodyAssignment of Error No. 6
Defendant Cody asserts that during the course of the trial, the trial court erred in allowing Hoyt Clark to testify concerning hearsay evidence received by him from a police dispatch over the objection of the defense.
Mr. Clark was an employee of the New Madrid County Sheriff's Department, New Madrid, Missouri. The record indicates that Mr. Clark was on duty on the evening of July 1, 1982, at which time defendant Edwards posted bond for a traffic ticket. Mr. Clark was testifying concerning the money which the defendants used to post the bond. It is the following question and answer which defendant Cody asserts was hearsay and thus inadmissible:
"State: Later in the evening, did you have occasion to examine the money closely?
"Mr. Clark: They posted bond around 10:00, something like that. At 12:00, Troop E Headquarters put out a dispatch about some supposedly bank robbers from Louisiana and the name EdwardsI remembered that." (R. p. 958).
Counsel for the defense then objected on the basis that the dispatch to which the witness testified was hearsay evidence.
Hearsay is testimony in court of a statement made out of court, the statement being offered to show truth of matters asserted and thus resting for its value upon credibility of the out-of-court asserter. However, the evidence is not hearsay if introduced to show that the utterance occurred or that the conversation took place rather than to show the truth of the matter asserted. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Feeback, 414 So.2d 1229 (La.1982).
The statement complained of did not constitute hearsay. The statement was not offered to prove the truth of the matter asserted. The trial court noted that the purpose of the testimony was to show the mental state of the witness or the reason why he took a certain action or the impression upon him rather than the truthfulness of the matter asserted. Mr. Clark was merely testifying as to his actions on the evening that the three defendants posted bond. It does not seem that the statement was offered to prove that there was a bank robbery or that a man named Edwards was involved. Since the statement was not offered to prove the truthfulness of the matter asserted, the defendant's assignment of error is without merit.
Defendant CodyAssignments of Error Nos. 7 and 9
Defendant Cody asserts that the trial court erred in allowing Augustus Howard, *1289 a witness for the state, to testify as to a pretrial identification made by him of Charles Cody from a photographic lineup, even though the witness could not make an in-court identification of defendant Cody. The defendant argues in brief that the best evidence of identification would be an in-court identification.
At trial, Mr. Howard was called to make an identification of the person who he saw fleeing from the Ruston State Bank on the day of the robbery. Mr. Howard testified that he could not make a positive identification mainly because of the length of time that had elapsed between the time of the robbery and also the changed appearance of the defendants. The trial court upheld defense counsel's objection to a tentative in-court identification by the witness. However, the court did allow the state to ask the witness questions concerning who he identified in a photographic lineup shortly after the robbery. In that testimony, the witness indicated which photograph he had identified after the robbery. The photograph was that of defendant Cody. Defense counsel objected that the photographic lineup was prejudicial on the basis that it was not the best evidence in the case.
The best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced. LSA-R.S. 15:436. Since the witness could not make an in-court identification and the defendant was successful in excluding an in-court identification, the witness's identification of the man he saw from the photographic lineup was then the best evidence available to the state. The Louisiana Supreme Court has held that LSA-R.S. 15:436, requiring production of the best evidence within a party's control, has to be applied sensibly and with reason. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Fallon, 290 So.2d 273 (La.1974). Such was clearly the case here. Additionally, the Louisiana Supreme Court has held that absent a showing of prejudice, a conviction will not be reversed on the ground that the best evidence was not produced. State v. Gaskin, supra; State v. Bennett, 341 So.2d 847 (La.1976). The defendant did not challenge the photographic lineup on the basis that it was unconstitutionally suggestive. Therefore, there was no showing of prejudice by the admission of the photographic lineup.
The jury was well aware that the witness could not make an in-court identification. Additionally, defense counsel had ample opportunity to cross-examine the witness concerning his identification of the defendant in the photographic lineup. Defendant's objection goes to the weight of the evidence rather than to its admissibility. We find this assignment of error to be without merit.
Defendants Harvey and EdwardsAssignment of Error No. 11
Defendants Harvey and Edwards allege that there was insufficient evidence by which to convict them of the crime of armed robbery as set out in LSA-R.S. 14:64. Under LSA-R.S. 14:64, armed robbery is the theft of anything of value from the person of another, or which is in the immediate control of another, by the use of force or intimidation while armed with a dangerous weapon.
Defendants Harvey and Edwards assert that it was not shown at trial that they directly took anything of value by use of force or intimidation. Harvey and Edwards assert that it was not shown that they were the two persons who entered the Ruston State Bank and used force or intimidation to take something of value.
Under LSA-R.S. 14:24, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are guilty as principals. State v. Lovett, 359 So.2d 163 (La.1978); State v. Willis, 322 So.2d 169 (La.1975); State v. Broussard, 312 So.2d 325 (La.1975).
All three defendants were seen in Ruston at or near the time of the robbery. The evidence in the present case indicates that *1290 all three defendants used the yellow Cadillac owned by defendant Harvey as a getaway car. Additionally, defendant Edwards paid bail for a traffic ticket in Missouri with stolen money from the Ruston State Bank. All three defendants, when arrested, were found in possession of the stolen money from the Ruston State Bank.
In order to satisfy due process standards, the record evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational finder of fact to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A review of the record indicates that a reasonable finder of fact could conclude that all three defendants acted together in the robbery of the Ruston State Bank. Under LSA-R.S. 14:24, it is clear that a person need not be present or commit the act directly to have the actions of his co-defendants imputed to himself as principal.
Therefore, this assignment of error is without merit.
Defendants Cody, Harvey, and EdwardsAssignment of Error No. 8
All three defendants assign as error the testimony of Inspector Roland Kaye who was allowed to testify concerning information he had received from Xavier Webb, an original co-defendant. Mr. Kaye was allowed to testify that he interviewed Webb and, as a result of his interview, he obtained information from Webb that he passed on to other law enforcement agencies, particularly in Illinois and Indiana. Defendants assert that this testimony was hearsay. The trial court ruled that Inspector Kaye could not repeat anything that he was told by Xavier Webb; but, Mr. Kaye could testify as to his actions as a result of his interview with Xavier Webb. In State v. Turner, 392 So.2d 436 (La.1980), a criminal investigator with the Louisiana Department of Corrections was allowed to testify as to information he had received from an informant through his investigation. The Supreme Court found that the information he received was not offered to prove the truth of the information but, rather, to show his reason for ordering a search of all the defendant's visitors. Therefore, the court found that the testimony was not hearsay.
In State v. Small, 427 So.2d 1254 (La. App. 2d Cir.1983), the defendant contended that the testimony of a deputy sheriff that the defendant was identified by his cousin as an occupant of the getaway vehicle constituted prejudicial hearsay. This court held that the testimony in question was not hearsay because it was not offered to prove the truth of the assertion it contains. The testimony was offered merely to show such a report was made to the officer and what action was taken pursuant to that report. Therefore, this court held that the testimony was properly admissible for that purpose.
Even if we assume that the testimony in question was hearsay which should have been excluded, there is likely no prejudicial error requiring reversal. Inspector Kaye was merely testifying that he found out the names of the three defendants through an informant. Mr. Kaye's testimony was limited to that information he had passed along in his investigation. Consequently, even if hearsay, the error would be harmless. LSA-C.Cr.P. Art. 921.
Therefore, we find this assignment of error to be without merit.
Defendants Cody, Harvey, and EdwardsAssignment of Error No. 10
All three defendants assign as error excessive sentences. Defendant Cody was sentenced to 50 years at hard labor; defendant Harvey was sentenced to serve 25 years at hard labor; defendant Edwards was sentenced to serve 37 and one-half years at hard labor.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983); State v. Brooks, 431 *1291 So.2d 865 (La.App. 2d Cir.1983); State v. Square, 433 So.2d 104 (La.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983); State v. Sepulvado, 367 So.2d 762 (La.1979). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983); State v. Smith, 433 So.2d 688 (La.1983).
In the sentencing proceeding for Charles Cody, the trial court reviewed the evidence of the case and the pre-sentence investigation report, and what it reveals about this defendant in this offense. The trial court stated that it considered the mitigating circumstances set out and found none of the circumstances to be applicable to this case. The defendant's conduct actually caused or threatened serious harm to other persons. The Court stated that it felt like a bank robbery is probably the most serious offense next to an actual killing because it endangers the lives of all the victims who are there. The court found that a short term of imprisonment would cause an undue risk that the defendant would commit another crime. The defendant's past record of criminal activity showed that leniency was not called for. Because of his prior conduct and because of the crime that defendant Cody committed in this case, the Court found that he was in need of custodial treatment and that a lesser sentence would deprecate the serious nature of the defendant's crime. Moreover, the defendant's particular role in this robbery was to go into the bank, as one of the two gunmen. The Court felt that the defendant should have a sentence comparable to that role. Consequently, the Court found that the defendant, Charles Cody, should be imprisoned at hard labor for a term of 50 years.
Next, the court considered the presentencing investigation of defendant Oscar Edwards. The facts concerning the offense were found to be basically the same as defendant Cody's. Defendant Edwards was not one of the defendants who went into the bank, but the court found that it had no doubt that he participated in the preparation and planning of the offense, and that he planned to share in the loot. Defendant Edwards had a long juvenile record, and an adult criminal record. In summary, defendant Edwards had four prior felony convictions in the State of Indiana. The Court stated that it took into account the factual basis for the imposition of sentence as directed by CCrP Art. 894.1. The Court again reviewed the mitigating circumstances listed in CCrP Art. 894.1 and found that none of those factors existed in the present case. The Court found that the only factor operating in the defendant's behalf is that he did not enter the bank itself; however, the Court did not feel that there was any question but that he was in on the planning and preparation for the robbery. As a result, the Court found that the defendant was in need of correctional and custodial treatment. The institution of any lesser sentence would deprecate the very serious nature of the defendant's crime. Consequently, the Court sentenced defendant Edwards to be imprisoned at hard labor for a term of 37 years and 6 months.
Next the Court considered the presentencing investigation and facts concerning defendant Ronald Harvey. Defendant Harvey had no juvenile record, but did have a record of adult criminal convictions. The Court stated that it took into consideration the factors found in CCrP Art. 894.1. As a consequence, the Court reviewed the mitigating factors and found that none of them exist in the present case. The only possible mitigating factor would be the fact that the defendant is a first felony offender, but even first offenders charged with armed robbery are not eligible for parole or probation. The Court found that the serious nature of the offense demonstrates *1292 that the defendant is probably not likely to respond to a shorter sentence. This defendant had chosen to participate in a scheme or plan that was contrary to the interests of society and detrimental to the proper operation of our social structure. Consequently, the Court found that the defendant was in need of correctional treatment in a custodial environment and that any lesser sentence would deprecate the seriousness of the crime. For those reasons, the Court sentenced defendant Harvey to be imprisoned at hard labor for a term of 25 years.
The record indicates that the trial court adequately complied with the criteria set forth in LSA-C.Cr.P. Art. 894.1. Therefore, we find this assignment of error to be without merit.
Decree
The defendants' convictions and sentences are affirmed.
Affirmed.