VICTORY, Judge.
Charles E. Harris was charged and convicted of three felony counts involving methamphetamine. The trial judge sentenced defendant to seven years at hard labor on Count 1, conspiracy to distribute methamphetamine; 12 years at hard labor on Count 2, distribution of methamphetamine; and eight years at hard labor on Count 3, possession of methamphetamine with intent to distribute. The sentences on counts 1 and 2 were made concurrent and ordered to run consecutively with the sentence on Count 3.
Defendant appeals his convictions and sentences, complaining that the trial court erred in (1) denying his pretrial motion for release from custody, (2) denying his three *443 motions for mistrial, and (3) ordering his sentences to be served consecutively. We affirm.
FACTS
On January 23, 1989, Kirt Lively called the Louisiana State Police and confessed to his participation in methamphetamine trafficking in Ouachita Parish. Lively revealed to Sergeant J. Via, Unit Commander of the Metro Narcotic’s Unit, that he had obtained methamphetamine from Jerry Lee Goodwin in Shreveport and distributed it to defendant, Charles Edward Harris, for sale to consumers in Monroe on several occasions. This distribution ring had been in operation from August 1988 to January of 1989, during which time Lively had received five major shipments of drugs.
Lively told Via that he had obtained a $14,000 bank loan to finance the purchase of one pound of methamphetamine from Jerry Lee Goodwin in December of 1988. He paid Jerry Lee Goodwin the entire amount, but initially received only two ounces of drugs. Lively then transported the drugs to Monroe and “fronted” it to defendant, who promised to pay for the drugs after it was sold.
Several days later, Lively returned to Shreveport and obtained seven more ounces of the pound which he had previously purchased from Goodwin. Defendant picked up the seven ounces of contraband at Lively’s residence in Monroe, but paid him only $1,000 in cash at that time.
On January 23, 1989, Goodwin called Lively and informed him that he would deliver either the remaining six ounces of methamphetamine or $6,000 cash refund to Monroe. On this same day, Lively confessed to Sergeant Via his involvement in the drug ring.
After confirming Lively’s confession, Via asked Lively to help retrieve the unsold quantity of methamphetamine from defendant to take it out of commerce. In a recorded conversation, Lively called defendant and requested that he return the methamphetamine. They spoke in code and referred to the ounces of methamphetamine as “chapters in a book.” Defendant agreed to bring four ounces of methamphetamine to Lively’s home, which was immediately placed under surveillance. Minutes later, a friend of defendant’s called Lively and told him to get out of the house because narcotics units were in the area around his home.
Lively drove around for 30 minutes and then phoned defendant to set up another time and place to transfer the drugs. Law officers wired Lively with a body microphone, who had agreed to meet defendant at the Charter Food Store in West Monroe.
Once Lively parked at the Charter Food Store, defendant approached the vehicle and delivered a sack. Lively stated “these are my books,” a prearranged signal, and the narcotics agents moved in and arrested everyone present. Four ounces of methamphetamine was seized from the paper sack.
Law officers removed loaded firearms from defendant and his companion, who was serving as defendant’s security guard. The officers then obtained a search warrant for the defendant’s residence where they recovered a bag in a storeroom containing three to four and one half ounces of methamphetamine.
A 72-hour hearing was conducted two days later on January 25, 1989. The defendant was arraigned and plead not guilty on March 1, 1989 under bill of information # 47,965 to four counts: (1) possession of a firearm by a felon, (2) conspiracy to distribute methamphetamine, (3) distribution of methamphetamine, and (4) possession of methamphetamine with intent to distribute. This bill of information was subsequently dismissed September 11, 1989.
A new bill of information was filed March 23, 1989 as #48,031 for the same three drug related charges, excluding the firearm charge. The defendant was not arraigned on this bill until April 5, 1990. During that arraignment, defendant’s motion for release from custody was denied, but his bond was reduced on the court’s own motion.
*444 RELEASE FROM CUSTODY
Defendant’s first assignment of error is that the trial court erred in denying his motion to be released from custody. Relying on LSA-C.Cr.P. Art. 701, defendant complains that the state failed to properly arraign him until April 5, 1990, almost 13 months after the filing of the second bill.
In the cases of State v. Charney, 541 So.2d 927 (La.App. 3d Cir.1989) and State v. Fruge, 541 So.2d 927 (La.App.3d Cir. 1989), the third circuit vacated a trial judge’s order releasing a defendant from custody because the state did not meet the 30 day period of LSA-C.Cr.P. Art. 701(C). Citing State v. Cody, 446 So.2d 1278 (La. App.2d Cir.1984) and Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the court weighed the factors presented and found that Charney and Fruge were not prejudiced by the delay in the arraignments and held that the trial court erred in ordering their releases.
Noting that the case had been bungled from the start, the trial court here chastised the district attorney’s office and the defense attorney for the delays. The court ordered that the defendant be arraigned that day and concluded that:
Notwithstanding this man’s incarceration, he has been aware of the charges against him. He originally was arraigned and pled not guilty on the same charge when it was filed under a bill of information. It’s not that he has been held without notice as to the charges against him. He’s had a hearing on a motion to reduce his bond in the previous case, which was denied. I presume the same evidence would be used and argued under the new indictment. He should have been arraigned ... when you are aware, the afternoon of January 8, he should have been arraigned that day, brought down from the jail at 1:30 if necessary and arraigned at that time. Why he wasn’t I have no idea. The prosecutor that was in charge of this case is no longer with the office and a lot of the blame has got to fall on his shoulders .... The man has been incarcerated now for how long, 11 months under ... 14 months under a substantial bond. I cannot say that he has totally been victimized in this case because there has been some prejudice shown but not irreparable. He’s had an opportunity to make the bond or have his bond reduced, which was denied. I presume that he is just simply unable to make the bond.
Although the length of the delay until arraignment on the second bill of information was error, the reason for the delay was inadvertence. Defendant had been arraigned timely on the identical charges under the first bill of information. Further, in spite of many court appearances, he failed to assert his right to speedy trial and cannot be said to have been prejudiced. See Cody, supra.
Finally, this matter is moot. Had the defendant sought relief via application for supervisory writs, he may have been able to establish that he was entitled to release without a bail obligation prior to trial. Now that he has been convicted and sentenced, pretrial release is no longer at issue.
This assignment is without merit.
MISTRIAL
In assignments of error 2 and 3, defendant argues that the trial court erred in denying mistrials during the testimony of Sergeant J. Via.
During cross-examination, defense counsel requested a mistrial while questioning Sergeant Via about defendant’s ownership of property:
Q: As far as you know the defendant doesn’t own anything of value besides the clothes on his back and the money that was in his wallet and what he had on his person?
A: Are you speaking of contraband? That was about $14,000 total.
The court denied the motion for mistrial and then instructed the jury to disregard Sergeant Via’s response.
In State v. Harris, 383 So.2d 1 (La.1980), the supreme court stated that mistrial is a *445 drastic remedy only warranted when error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. The remark by Sergeant Via concerning the value of the contraband is not covered by the mandatory mistrials of LSA-C.Cr.P. Art. 770. Therefore, the judge properly admonished the jury to disregard the remark, pursuant to LSA-C.Cr.P. Art. 771. In addition, defendant did not establish that he was prejudiced by the remark. The jurors had previously heard testimony from Lively concerning the dollar amount of drugs supplied to the defendant.
Defense counsel requested a second mistrial during questioning of Sergeant Via, on rebuttal, about his contact with Michelle Strickland, the babysitter, who was present in the house which was searched for the defendant’s drugs.
Q: Did you ask her if she was aware or not whether the defendant sold any drugs?
A: Yes, sir. I did.
Q: And what was her response?
A: At that time she indicated that she was aware that drugs were being sold out of the house
Q: She indicated to you by whom?
A. By the defendant, Mr. Harris.
The last motion for mistrial occurred during this same line of questioning of Sergeant Via:
Q: And did she tell me anything about the phone call as ... that she became suspicious of anything?
A: She indicated that the phone call led her to believe that the defendant may be involved in drug traffic.
The trial court overruled both of the defendant’s motions for mistrial.
Testifying for the defense, Michelle Strickland, on cross-examination, denied having any knowledge that the defendant sold drugs from his home. She also denied that she became suspicious because of telephone calls made by defendant in her presence the day of his arrest. Her testimony was contrary to statements she had made previously to Sergeant Via. Since Michelle Strickland denied making these statements on the stand, Sergeant Via’s rebuttal testimony that she did make the statements was a proper attempt to attack her credibility. La.Code of Evidence Arts. 611(E) and 613.
These assignments are without merit.
INSUFFICIENCY OF THE EVIDENCE
In assignment of error 4, defendant complains that the convictions were based upon insufficient evidence. This assignment was neither briefed nor argued and is, therefore, considered abandoned. State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir. 1989), writ denied, 558 So.2d 1123 (La.1990).
EXCESSIVE SENTENCE
In his last assignment of error, the defendant claims the trial court erred in imposing a consecutive prison sentence on Count 3 without giving sufficient reasons. The defendant argues that the methamphetamine which was distributed and the methamphetamine alleged to have been possessed with intent to distribute was the same. Therefore, he argues the trial court erred in imposing consecutive sentences for those interrelated charges and that the total length of his sentences, 20 years, is excessive.
When two or more offenses constitute the same act or transaction or are part of a common scheme or plan, concurrent sentences are generally appropriate, unless the trial court expressly directs that some or all of them be served consecutively. LSA-C.Cr.P. Art. 883. The trial court expressly directed that the sentence of eight years at hard labor for Count 3 be served consecutively with the concurrent sentences imposed for Counts 1 and 2.
In State v. Ortego, 382 So.2d 921 (La.1980), the Louisiana Supreme Court stated:
Although the trial court has this discretion [to impose consecutive sentences even though the offenses are based on the same act or transaction or arise out of a common scheme or plan], there is a constitutional limitation that sentences, *446 whether consecutive or concurrent, not be excessive. In determining whether sentences are excessive we should consider, among other factors, whether convictions arise out of a single course of criminal conduct. The general preference for concurrent rather than consecutive sentences was recognized by this Court in State v. Underwood, 353 So.2d 1013, 1019 (La.1977) in which we observed that “[b]ased on the American theory and practice, concurrent rather than consecutive sentences are the usual rule, at least for a defendant without previous criminal record and in the absence of a showing that the public safety requires a longer sentence.” This Court, however, has never held that if convictions arise out of a single course of illegal conduct, consecutive sentences will necessarily be found to be excessive. Other factors must be considered.
In a post sentence per curiam, the trial judge explained that the offense of possession of methamphetamine with intent to distribute, charged as Count 3, was separate from the crimes charged in Counts 1 and 2. Although the charged offenses occurred close in time, the crimes of distribution (the four ounces seized at Charter Food Store) and possession with intent to distribute (the three to four and one-half ounces later seized at defendant’s house) did not involve the same methamphetamine, as defendant argues.
Even assuming these offenses arose from the same act or transaction, or were part of a common scheme, we find no error in the imposition of the consecutive sentence for Count 3. The record clearly demonstrates that the defendant was actively and regularly engaged in drug trafficking. His persistent criminal behavior, coupled with his diligent involvement in distribution to the Monroe community adequately supports the imposition of consecutive sentences.
In determining whether a sentence imposed is excessive, the sentencing court must consider two interrelated criteria. First, the record must reflect that the trial court considered the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. The judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
It is well settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983).
At the instant sentencing, the trial judge had benefit of a presentence investigation report. Noting that defendant was 42 years old, single, and the father of two children, the trial court observed that defendant had a tenth grade education plus a G.E.D. Defendant had a troubled childhood which included robbing and harming his father with the knowledge and cooperation of his mother. Defendant acknowledged a significant substance abuse problem and heavy use of marijuana and methamphetamine prior to his arrest.
The trial judge’s reasons for the sentences imposed, which consisted of nine pages of the transcript, reveals his enumeration of the factors set forth in LSA-C.Cr.P. Art. 894.1, and notes that defendant’s distribution of methamphetamine caused and threatened serious harm to the community due to the dangerous nature of the drug. In addition to having a juvenile record, defendant had been convicted of two prior felonies, one of which was drug related, and had been charged with 14 misdemeanors, one of which was possession of marijuana. Since the defendant had the character and attitudes which made him *447 likely to commit other crimes, the judge was fearful that the defendant would continue to use or distribute drugs. Testimony at trial revealed that he had been involved in an organized drug ring distributing great quantities of methamphetamine to the Monroe community for at least six months prior to his arrest. According to Lively, this was his fifth major shipment of drugs to defendant. In addition, the court noted that defendant was carrying a loaded .45 semi-automatic weapon when he was arrested, indicating a possible resort to violence, if need be.
The court determined that probated sentences were neither justified nor allowed under the circumstances of defendant’s past criminal record. Considering the defendant’s prior felony drug conviction, the court found an undue risk that he would commit another crime. The court concluded from the evidence at trial and the PSI that defendant was deeply involved in distributing methamphetamine and in need of correctional treatment because he was not a youthful offender. Further, the judge stated that lesser sentences would not only enhance the risk of future drug dealings, but would deprecate the seriousness of his offenses.
For conspiracy defendant was sentenced to 7 years at hard labor; for distribution, 12 years at hard labor; and for possession with intent, 8 years at hard labor. Counts 1 and 2 were made to run concurrently and consecutively with Count 3 and defendant was given credit for time served.
The sentencing exposure for distribution of methamphetamine and possession with intent to distribute are the same — a minimum sentence of five years at hard labor and a maximum of 30 years at hard labor. LSA-R.S. 40:967(B)(1). Defendant’s conviction of conspiracy to distribute methamphetamine carries a maximum sentence of 15 years at hard labor. LSA-R.S. 40:967(B)(1) and LSA-R.S. 14:26(C). Defendant’s conduct exposed him to a maximum of 75 years at hard labor.
In imposing the consecutive sentences, the judge adequately considered the factors of Article 894.1 and concluded that defendant’s conduct threatened serious harm to the ultimate consumers of the drug. The defendant was neither a youthful offender, nor a first felony offender, and the drug transaction involved a substantial amount of methamphetamine worth over $8,000 wholesale. Due to his extensive prior criminal record and deep involvement in trafficking dangerous drugs, the trial judge was justified in imposing sentences totalling 20 years. We find the sentences imposed, including the consecutive sentence for Count 3, to be sufficiently particularized on the record, not grossly disproportionate to the crimes committed, and, therefore, not excessive.
For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
AFFIRMED.