408 So.2d 1247 (1982)
STATE of Louisiana
v.
Mary HEARD.
No. 81-KA-0896.
Supreme Court of Louisiana.
January 25, 1982.
*1248 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
M. Michele Fournet and Bonnie P. Jackson, Asst. Public Defenders, Georgia Wileman, for defendant-appellant.
BAGERT, Justice Ad Hoc[*].
Mary Heard was charged by bill of information with the June 21, 1979, armed robbery of Gail Benton, a teller at the Baton Rouge Bank. Originally charged with Mary Heard were Robert Brown, who was found guilty as charged at a separate trial, and Jeffrey Hamilton, who was allowed to plead guilty to a charge of accessory after the fact. A jury found the defendant guilty of attempted armed robbery, and she was sentenced to serve five years at hard labor without benefit of parole, probation, or suspension of sentence. On appeal she urges two assignments of error for the reversal of her conviction and sentence.
The theory of the state's case was that the defendant, Robert Brown, and Jeffrey Hamilton had planned to rob the bank. Mary Heard allegedly scouted the bank beforehand and then waited at the wheel of the getaway car while Robert Brown and Jeffery Hamilton entered to confront the teller. The defense claimed that Mary Heard was an unwitting participant who knew only that the two men were entering to transact some business.
ASSIGNMENT OF ERROR NO. 1
The defendant argues that the trial court erred in denying a challenge for cause as to prospective juror, Ms. Sheridan. The defense used all its peremptory challenges, and is therefore entitled to complain of any alleged error. State v. Sylvester, 400 So.2d 640 (La.1981); State v. Qualls, 353 So.2d 978 (La.1977); La.C.Cr.P. art. 800.
Article 797(2) of the Code of Criminal Procedure provides that either party may challenge for cause a prospective juror who cannot be impartial. The judge conducted the initial voir dire questioning in this case. While addressing Mrs. Sheridan, the following exchange transpired:
Judge: ... do you have any relatives or close friends who are engaged in law enforcement, police, sheriff's office, FBI agents, anything like that? * * * * * *
Sheridan: I have a son who is a sheriff's deputy.
Judge: You feel there's anything there that would make you more prone to believe a policeman?
Sheridan: It might.
Judge: Might. You don't know anything about this case, do youat the moment, I mean?
Sheridan: No sir.
Judge: Mrs. (sic) Sheridan is not a witness in this case, is he. Deputy Sheridan, he's no witness in this case. Do you honestly feel that perhaps because you have a son that is a deputy you might credit the policeman or peace officer's testimony more?
Sheridan: Well, it shouldn't.
Judge: Pardon me?
Sheridan: It shouldn't, you know.
Judge: I realize you understand that you don't do that. You've got a grown son and I'm sure you judge and weigh his credibility on some of the things he told you as he grew up, is that true?
Sheridan: Right.
Judge: You would pray that you did it objectively in whatever punishment *1249 you meted out. So, here we're trying an allegation of armed robbery. Simply because you have a son that is a deputy, I'm just wondering if you couldn't be fair and impartial if you were convinced whichever waywould you vote your conscience?
Sheridan: Yes sir.
(Tr. at 26-27.) This questioning provided the impetus for defense counsel to ask further questions of Mrs. Sheridan. In response to his inquiries, Mrs. Sheridan noted that while references to police officers might bring her son to mind, she had no question but that she could be impartial. A defense challenge for cause was therefore denied.
It is well settled that relationship to a law enforcement officer is not of itself grounds for a challenge for cause. State v. Sonnier, 379 So.2d 1336 (La.1980); State v. Qualls, supra. The question involved in this case is whether Mrs. Sheridan could assess the credibility of each witness independent of his occupation. The trial judge is afforded great discretion in making this decision, and his decision will not be overturned absent an abuse of that discretion. A challenge for cause is often unwarranted where a prospective juror at first expresses an opinion prejudicial to the defendant, but upon further inquiry demonstrates the ability and willingness to decide the case impartially by listening to the evidence and following the trial court's instructions. State v. Bates, 397 So.2d 1331 (La.1981); cf. State v. Claiborne, 397 So.2d 486 (La.1981).
This case therefore presents an issue no different from that in Qualls, supra, and Sonnier, supra. In Qualls this Court approved of the denial of a challenge for cause when a prospective juror acknowledged that her husband was a policeman, but when informed of the law convinced the judge that she could believe testimony contradictory to that of the police. In Sonnier we found no error in denying a cause challenge to a prospective juror whose brother was the sheriff for the neighboring parish.
Mrs. Sheridan appears to have answered the questions posed to her as honestly as possible. When informed that the measure of credibility was not the uniform the witness wore, she drew on her own experience and convinced the trial court that she could serve as an impartial juror. There was thus no abuse of discretion in denying the challenge for cause.
ASSIGNMENT OF ERROR NO. 4
The defendant also assigns as error the introduction into evidence of a prior inconsistent statement after the witness admitted having made the statement.
After his own conviction, but prior to his sentencing, Robert Brown wrote a letter to the district attorney. He stated, "I want to help myself if I can and it's not too late", lamenting his own conviction and speaking of Mary Heard's upcoming trial:
But what of Mary Heard/Hamilton? (insanity) My, my, my, is she really going to pull it off? Mystified. I am. Why. Because on June 21, 1979 a travels check was cashed by Mary a few minutes before the Robbery accured. No doubt this open a question, was Mary a "master mind" with this crime? She knew the crime was going to accur. Before it happened and after; Also it was her car, and she drove it: and told Jeffery to go inside! Now. She's insane, or is she playing another game?
Probably in reliance on this letter, the district attorney called Robert Brown as his witness. Once on the stand, however, Brown denied that the defendant had ever known of the crime. Brown claimed that he and Jeffrey Hamilton had planned and executed the robbery, telling defendant only to stay in the car and to keep the motor running. The prosecutor showed Brown the letter quoted above, and Brown admitted writing it. He denied its truth, however, claiming that his trial testimony was the truth. The prosecutor pled surprise, and was allowed to impeach. Without objection, he read the quoted portion of the letter, asking the witness if those were *1250 his words. Once again, Brown admitted writting the letter. The prosecutor moved to introduce the letter, and defense counsel objected on the grounds that the letter "does not serve as impeachment of the witness. It muddies the water somewhat." The objection was overruled.
On appeal, the defendant argues two distinct grounds for the objection: (1) that the proper predicate for the use of a prior inconsistent statement was not laid; and (2) that the prior inconsistent statement cannot be admitted into evidence once the witness has admitted making it.
It is axiomatic that each party may impeach both the testimony and credibility of every witness called on behalf of the other side. La.R.S. 15:493. This same statute sets forth the foundation required for the use of a prior inconsistent statement:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
This Court has often applied the requirement for a proper foundation quite strictly. See, e.g., State v. Lafleur, 398 So.2d 1074 (La.1981); State v. Gatlin, 396 So.2d 1294 (La.1981). The rationale for such a strict foundation is to obviate surprise, to let the witness either deny or explain the inconsistency. The witness can do neither unless he is told exactly which statement he is dealing with.
In the case at bar, the record shows that from the very first Robert Brown understood the prosecutor was talking about the letter from which we have quoted. Both counsel established that the letter was written to an assistant district attorney, and Brown himself hinted that the letter was written about the time of sentencing. We therefore find no reversible error in the prosecutor's failure to set the foundation in a precise manner.
However, the defendant argues further that the trial judge erred in allowing the prosecutor to introduce Brown's letter into evidence. While overruling defense counsel's objection, the trial court cautioned the jury that the letter was impeachment evidence, and was to be considered not as evidence of the defendant's guilt, but only in assessing Robert Brown's credibility. This instruction was perfectly correct, but in large measure explains why the letter should not have been allowed into evidence. In State v. Mosely, 360 So.2d 844 (La.1979), at the defendant's trial for simple burglary a witness testified that he had spent most of the evening with the defendant, and that they had never walked towards the burglarized building. On cross-examination, the prosecutor had the witness distinctly admit that he had told police on an earlier occasion that the defendant and he had strolled towards the burglarized building. After the witness identified his previous written statement, the state was allowed, over objection to read it into the record. This Court found the maneuver "highly prejudicial" and reversed:
Proof that the prior inconsistent statement was made can be used for impeachment purposes only, not to show the truth of its contents. If a witness distinctly admits having made a prior inconsistent statement, his credibility has been effectively impeached. At this point, the permitted reason for the use of the prior inconsistent statement (impeachment) has been accomplished. Thereafter, proof that the statement was made would not be for impeachment purposes, but rather to show the truth of its contents, which is not permissible. Accordingly, if a witness distinctly admits having made a prior *1251 inconsistent statement, evidence that the statement was made is inadmissible.
360 So.2d at 846. Accord, State v. Molinario, 383 So.2d 345 (La.1980).
Though a prior inconsistent statement may be incorrectly admitted into evidence, the error is not necessarily reversible. This Court has recognized the value of a prior inconsistent statement, and for that reason had not precluded its use on cross-examination when the witness admitted on direct examination that he had made an "entirely different" statement prior to trial. In State v. Redwine, 337 So.2d 1041 (La. 1976), the witness at trial completely exculpated the defendant; in his direct testimony he admitted having made an "entirely different" statement to the police, and defense counsel then sought to bar cross-examination as to the nature or extent of that contradiction. This Court held that the trial judge had acted properly in allowing the prosecutor to exploit blow by blow the many inconsistencies. Cf. State v. Gomez, 365 So.2d 1313, 1316 (La.1978); State v. Prestridge, 399 So.2d 564, 574-75 (La.1981).
The prosecutor in this case thoroughly exploited the value of the prior inconsistent statement by reading it without objection from the defense. The defense objected only when the prosecutor sought to have the letter admitted into evidence. At that time the judge instructed the jury on the limited value of impeachment evidence. That instruction was repeated in the judge's jury charge at the conclusion of the trial; in closing argument the state also noted, when referring to Brown's letter, the limited value of impeachment evidence.
While Brown's testimony may have been important to the defense, the state had not relied upon him alone. Jeffrey Hamilton testified that the trio had planned to rob the bank together, and that Robert Brown had asked the defendant to "case" the bank first. According to Hamilton, when defendant reported that the bank was "okay", Brown asked her to back the car into a parking space and to keep the motor running. After the robbery, defendant drove them to Hamilton's grandmother's house, where the three split the money.
In view of the strong evidence presented by the state and the fact that the damage was done to the defendant's case before defense counsel voiced an objection, we are of the opinion that the improper admission of the letter did not contribute in any significant way to the defendant's conviction.[1] No reversible error was committed.
Finding no reversible error in either of the two assignments briefed, the defendant's sentence and conviction are hereby affirmed.
CALOGERO, Justice, dissenting.
I disagree with the majority's finding nonmeritorious defendant's assignment of error number 4. In State v. Mosley, 360 So.2d 844 (La.1978), this Court reversed that defendant's conviction under circumstances similar to those in the instant case. In Mosley, the witness admitted having made an earlier statement contradictory to his trial testimony and the prosecutor began to read the statement aloud. Defense counsel objected to the reading of the statement and his objection was overruled. This Court reversed, saying:
Proof that the prior inconsistent statement was made can be used for impeachment *1252 purposes only, not to show the truth of its content. If a witness distinctly admits having made a prior inconsistent statement, his credibility has been effectively impeached. At this point, the permitted reason for the use of the prior inconsistent statement (impeachment) has been accomplished. Thereafter, proof that the statement was made would not be for impeachment purposes, but rather to show the truth of its content, which is not permissible. Accordingly, if a witness distinctly admits having made a prior inconsistent statement, evidence that the statement was made is inadmissible. 360 So.2d at 846.
In the instant case the prosecutor not only read portions of the letter to the jury; he also introduced the entire letter into evidence. This was a serious infraction of a substantial right of the accused and can hardly be termed nonprejudicial. This is particularly so in light of the fact that defendant's complicity in the crime was seriously contested. Defendant asserted that she had no knowledge an armed robbery would occur and drove the car away from the bank without knowing that her companions had committed the robbery. When Brown testified that defendant had nothing to do with the robbery, the state was, at most, entitled to attack his credibility by having him admit as he did that he had given a prior contradictory statement. Improperly having before the jury the substance of that statement in which Brown said that the robbery scheme originated with defendant, by a reading of the letter and then by its introduction into evidence surely had a seriously prejudicial effect. The trial judge's instructions regarding the limited use of the letter for impeachment purposes only were insufficient to cure the prejudice which resulted from the erroneous admission of the letter.
NOTES
[*] Judges James C. Gulotta and Jim Garrison of the Fourth Circuit Court of Appeal and Judge Bernard J. Bagert, Sr. of the Criminal District Court for the Parish of Orleans participated in this decision as Associate Justices Ad Hoc, joined in by Chief Justice John A. Dixon, Jr. and Associate Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., and Fred A. Blanche.
[1] In assessing the importance of the error, it should be noted that the state at no time urged the jury to use the letter as substantive evidence. In brief, the defendant correctly notes that the letter informed the jury that the defendant at one time had entered a plea of "not guilty by reason of insanity." While it is improper to inform the jury of such a plea when it is withdrawn by the time of trial, a finding of prejudice would require assuming that jurors were under a mistaken impression that such a plea in fact admits factual guilt but denies the presence of mens rea. Under Louisiana law, the proper plea is a joint one of "not guilty and not guilty by reason of insanity", in which neither factual guilt nor the existence of mens rea is admitted. In any event, the jury was informed of the prior insanity plea when the prosecutor read the letter, and no objection was lodged at that time. The prosecutor never urged the jury to draw inferences from the insanity plea.