REDMANN, Chief Judge.
Defendant’s appeal, from his conviction and sentence for two counts of armed robbery after trial by jury, argues three errors.
Defendant first complains of failure to excuse for cause a juror whose daughter had been a victim of violent crime. That juror never said that she could not render an impartial verdict, although she did say she could not forget what had happened to her daughter. She first said “I guess so” when asked whether she could “be able to be a fair and impartial juror”; and on the final question she answered a simple “yes” to whether she could “independently judge what evidence you hear today and not let what happened to your daughter in any way influence your verdict in this case.” Defense counsel characterizes this as a “feeble” yes, but it is necessarily a decision for the trial judge whether a yes is “feeble,” inherently unreviewable by an appellate court’s reading of a transcript that says “yes.” We can find no abuse of the discretion that is his, State v. Eastin, 419 So.2d 933 (La.1982). See also State v. Heard, 408 So.2d 1247 (La.1982). And the simple fact that a prospective juror was personally the victim of a similar crime is not cause for challenge; State v. Ragsdale, 249 La. 420, 187 So.2d 427 (1966).
Defendant second argues that defendant was prejudiced by the state’s questioning about convictions he had admitted on direct and about defendant’s selling of marijuana (for which he had never been convicted).
The marijuana questioning was the result of defendant’s testimony on direct that he was the victim rather than the perpetrator of the armed robbery. He testified that he had made one sale of marijuana earlier in the vicinity and was about to sell marijuana to the two state witnesses when the male got a gun from the trunk of his car to rob defendant of about a pound of marijuana that he had. The assistant district attorney’s cross-examination on that version of the facts necessarily required questioning on defendant’s marijuana selling activity and it was not error to allow that cross-examination.
As to past convictions, defense counsel on direct asked, as to a concealed weapon conviction, “Were you found guilty, or did you plead guilty?” Defendant’s re *391 sponse was “I plead guilty” and testified of pleading guilty to burglary. (Defense counsel also asked “You were found guilty, or you pled guilty?” to possession of marijuana, but the transcript does not report defendant’s answer.) The state’s cross-examination fairly responded to that context, by asking defendant whether he was guilty of the offenses for which he was convicted. The only instance of repeated questioning concerned defendant’s burglary conviction. Defendant first denied he broke into a car, answered no to whether he in fact committed simple burglary of a specified automobile, then admitted he had pled guilty to doing so, attempted to evade the question whether he was guilty by repeating “I pled guilty to it, yes,” and finally conceded that he did break into the car. After that exchange a quick summary of defendant’s four convictions (he had testified to only three on direct) was not an undue repetition. We agree that the state’s sarcastic “congratulations” to defendant’s having “made it until November” (the date of the offense charged) after being released from prison in February was unnecessary and inappropriate, but we believe that a reasonable jury would resent rather than be unfairly prejudiced by such a comment by the state. We find no undue prejudice to the defendant by the state’s questioning.
Defendant’s final assignment of error is that the second-offender maximum sentence of 198 years was an excessive sentence for a 22-year old not previously convicted of violent crime, and is not supported by the trial judge’s reasons at the sentencing hearing. The trial judge noted defendant’s two previous convictions for carrying concealed weapons (“Anybody carrying a gun intends violence”), and the burglary conviction on which defendant was charged as a second offender, and the “perjury the entire time you sat on that [witness] stand. You told me right then you weren’t going to rehabilitate.” Defendant especially objects to the judge’s statement “You’ve been in jail practically your whole life up to now.” That statement is of course incorrect; perhaps the trial judge meant “in trouble.” In any case it is clear that the judge did not have this defendant confused with anyone else, and recited exactly what this defendant’s past criminal history is.
We could agree, as a theoretical matter, that defendant may not be among the very worst of second-offender armed robbers. He did not, for example, commit personal injury upon his victims (although that in itself would be another crime). But, also as a theoretical matter, we must say that defendant is not among the least of second-offender armed robbers. The trial judge correctly stated that society needs protection from him more than from a simple second offender. To give him the minimum second-offender sentence of 38 years, when he has two concealed weapons convictions in addition to those that would require the 33-year minimum, would be inappropriate. To place him in the middle category between 33 and 198 years might arguably be theoretically more appropriate, resulting in a sentence on the order of 82 years. But such a theoretical nicety is of no practical significance, for an 82-year sentence would imprison him until age 104, decades beyond reasonable life expectancy. Whether he is sentenced to 198 or 82 or even 60 years, the practical result is a life sentence. Unless we are obliged to hold that the Legislature acted beyond its power in requiring a sentence of from 33 to 198 years, we cannot say that a life sentence for this defendant with his criminal history is excessive. We see no point in remanding for sentencing to some lesser number of years that would make no practical difference in his imprisonment for life.
Affirmed.