601 So.2d 730 (1992)
STATE of Louisiana
v.
Arthur JACKSON.
No. 92-KA-139.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1992.
*732 Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff/appellee, State of La.
Ginger Berrigan, Indigent Defender Bd., Gretna, for defendant/appellant, Arthur Jackson.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
The defendant, Arthur Jackson, was convicted of aggravated rape (LSA-R.S. 14:42) and armed robbery (LSA-R.S. 14:64). He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for the aggravated rape conviction, and forty (40) years at hard labor without benefit of parole, probation or suspension of sentence for the armed robbery conviction. The trial judge ordered that the sentences be served consecutively, affording the defendant credit for time served prior to sentencing. This appeal followed. We affirm.

FACTS
On the night of March 13, 1991, the victim fell asleep while watching television in her bedroom. Sleeping next to her was her 12-year old son. During the night, the defendant removed a glass pane from a window on the side of the victim's residence and entered. Wearing a white scarf on his face, the defendant made his way to the victim's bedroom. She awoke to find the defendant standing over her with his hand over her mouth. He told her not to make any noise or he would harm her sleeping son. The victim attempted to reach for a pistol she kept under her pillow; however, the defendant grabbed her hand *733 and picked up the pistol himself, saying "I knew you had it."
While pointing the pistol at the victim, the defendant ordered her to accompany him to another bedroom in the house. When the two reached that bedroom, the defendant asked if the victim had any money. She responded that she had some money in her purse which was in the bedroom they had just left. Once again at gunpoint, the defendant walked the victim back to her bedroom where she retrieved her purse. The two then returned to the other bedroom; and the defendant, still holding the pistol on the victim, ordered her to disrobe. While the victim was removing her clothes, the defendant emptied the contents of the purse and took the $6.00 in cash and $90.00 in food stamps he found. He directed the victim to cover her eyes with a headband, but she still got a good view of her assailant and particularly noticed the initials "A.J." tattooed on the top of his left hand.
After the defendant also undressed, he told the victim to lie down on a bed in the room. He then got on top of the victim and attempted sexual intercourse but was unable to achieve an erection. The defendant asked the victim if there was any lotion in the house. When she answered that a bottle of lotion was in the bathroom, the defendant conducted her to the bathroom at gunpoint. They picked the lotion and returned to the same bedroom, where the defendant commanded the victim to rub lotion on his penis. After several attempts, the defendant did achieve an erection, penetrated the vagina of the victim and completed the rape.
After the rape, the defendant got dressed and started looking around the room for material to use to tie up the victim. She begged the defendant not to tie her up because of the traumatic impact which would result when her son awoke and discovered his mother in that condition. The defendant relented, but ordered the victim to remain motionless and quiet while he made his escape. He threatened to return and hurt the victim's son if she made any noise. The victim complied with the defendant's instructions until she heard the defendant leave through the rear door of the residence. She then telephoned the police authorities and reported the attack.

SUFFICIENCY OF EVIDENCE
In his first assignment of error, the defendant argues that the evidence presented at trial was legally insufficient to support his aggravated rape conviction. He contends that, at most, the evidence would only support a finding of guilt to the lesser included offense of forcible rape.
The standard for reviewing a sufficiency of the evidence claim is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988).
Louisiana defines rape as the act of sexual intercourse committed upon a person without consent. LSA-R.S. 14:41. Aggravated rape occurs when the victim's consent is negated under one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is over come by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act. (LSA-R.S. 14:42).
Forcible rape is committed when the victim is prevented from resisting the rape by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. LSA-R.S. 14:42.1.
Although aggravated rape and forcible rape are similarly defined, the Louisiana *734 Supreme Court has held that a distinction exists between the two crimes based on the "degree of force employed and the extent to which the victim resists." State v. Parish, 405 So.2d 1080, 1087 (La.1981) (on rehearing). This court has previously ruled that committing a rape while armed with a dangerous weapon removes the offense from the gray area between aggravated and forcible rape and places it squarely under the crime of aggravated rape. State v. Creel, 508 So.2d 859 (La.App. 5 Cir.1987), writ denied, 532 So.2d 171 (La.1988). See also State v. Sosa, 446 So.2d 429 (La.App. 4 Cir.1984), writ denied, 450 So.2d 361 (La. 1984), cert. denied, Sosa v. Louisiana, 469 U.S. 866, 105 S.Ct. 209, 83 L.Ed.2d 140 (1984).
In this case, the victim testified that, after she awoke to find the defendant standing over her bed with his hand on her mouth, she reached for a pistol that she kept under her pillow. The defendant prevented her from getting the pistol grabbing her hand, and he took the pistol himself, saying "I knew you had it." The defendant remained armed with the pistol throughout the entire ordeal. He kept the victim at gunpoint even while the actual rape occurred and threatened to hurt her young son if she resisted him. When he finally left the victim's residence, the defendant was still armed with the pistol. Considering this evidence in the light most favorable to the prosecutor, we find that the defendant's conviction for aggravated rather than forcible rape was proper. State v. Creel, supra; State v. Sosa, supra.
This assignment of error lacks merit.

HEARSAY
In his second assignment of error, the defendant alleges that the trial court permitted inadmissible hearsay testimony regarding the alleged facts of the offense.
The state opened its case with testimony from Jefferson Parish Sheriff's Deputy David Greenwood, the first officer to arrive at the scene after the offense was reported. The prosecutor asked Deputy Greenwood to relate what the victim reported to him when he reached the scene. Defense counsel objected to this testimony as being hearsay; however, the trial judge overruled the objection, noting that the challenged testimony involved the victim's initial complaint of a rape.
Under Article 802 of the Louisiana Code of Evidence, hearsay is inadmissible unless subject to an exception found in the Code or other legislation. Hearsay is defined as "a statement,[1] other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801 C. Among those statements not classified as hearsay are certain prior statements by a witness. LSA-C.E. art. 801 D(1)(d) provides that a "statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... [c]onsistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior." The trial judge relied on this article in overruling the defendant's objection of Deputy Greenwood's testimony.
The defendant claims that implicit in these conditions imposed by LSA-C.E. art. 801 D(1)(d) is the requirement that the defendant testify before the offer of the statement in order that the court might evaluate the consistency between the statement and the declarant's testimony. However, LSA-C.E. art. 801 D(1)(d) does not specifically include such a requirement in its provisions. Nor is that requirement implicitly established in the article, as the defendant now suggests. Though not articulated precisely, the wording of Article 801 D(1)(d) suggests that the proper procedure for evaluating the admissibility of a statement under that article is outside the presence of the jury, preferably before trial as was done in State v. Moran, 584 So.2d 318, 322-323 (La.App. 4 Cir.1991), writ denied, 585 So.2d 576 (La.1991).
*735 In the present case, the trial judge ruled, outside the presence of the jury, that the challenged testimony of Deputy Greenwood regarding the victim's statement was admissible under LSA-C.E. art. 801 D(1)(d) because the statement was an initial complaint of sexually assaultive behavior. That ruling was made, however, without a determination that the victim's testimony and the statement were consistent. Therefore, the trial judge did not initially consider all of the conditions necessary to issue a ruling under Article 801 D(1)(d). Although the defendant attempts to demonstrate critical inconsistencies between the victim's prior statement and her trial testimony, we have carefully scrutinized both the statement and her testimony and find that a reasonable comparison of the two reflects that they are materially and satisfactorily consistent. Accordingly, we conclude that any defect in the trial judge's premature ruling was remedied when the victim testified; and the error, if any, was harmless. LSA-C.Cr.P. art. 921.
This assignment of error lacks merit.

JURY CHALLENGES
The defendant claims that the trial court committed reversible error by failing to excuse three prospective jurors for cause after their voir dire examination.
An accused's right to trial by an impartial jury in a criminal proceeding is guaranteed by the Sixth Amendment of the United States Constitution and by Article 1, Section 16 of the Louisiana Constitution. Jury trials are governed by Articles 782 through 808 of the Louisiana Code of Criminal Procedure. In particular, Article 797 provides:
The state of the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other defense.
A defendant who exhausted all of his peremptory challenges before completion of the jury panel is entitled to seek appellate review of a ruling denying a challenge for cause made by him. State v. Comeaux, 514 So.2d 84 (La.1987). To obtain a reversal, the defendant must show (1) that the trial judge erred in refusing to sustain a defense challenge for cause, and (2) that the defendant exhausted all of his peremptory challenges. Comeaux, supra; State v. Smith, 491 So.2d 641 (La.1986). The record in this case reflects that the defendant had used all of his peremptory challenges before the panel was complete so he has qualified for the second prong of the test.
"A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial if the juror's responses as a whole reveal facts from his bias, prejudice or inability to render judgment according to law may be reasonably implied." State v. Jones, 474 So.2d 919, 926 (La.1985); State v. Wiggins, 518 So.2d 543 (La.App. 5 Cir.1987), writ denied, 530 So.2d 562 (La.1988). The true test of a juror's qualification to serve is his or her ability to judge impartially based on the evidence adduced at trial, as determined form the totality of responses given at voir dire. State v. Williams, 410 So.2d 217 (La.1982). When a prospective juror has expressed an opinion seemingly prejudicial to the defense, but on further inquiry demonstrates the ability and willingness to *736 decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Heard, 408 So.2d 1247 (La.1982). The trial judge has broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse. State v. Wiggins, supra. The foregoing principles apply in resolving each of the defendant's three claims.

1. Prospective Juror Pullie.

During the voir dire conducted by the defense counsel, prospective juror Pullie expressed some ambivalent feelings about how a defendant's exercise of his Fifth Amendment right to remain silent would affect her ability to remain impartial. However, upon further questioning, Ms. Pullie stated that she could be fair and impartial in the event that the defendant should choose to remain silent:
MR. LILLIAN:
Ms. Pullie, a couple of more quick questions about whether or not Arthur Jackson testifies. As I recall, you were saying that you really wanted to hear from him in your evaluation of this case. Is that correct?
MS. PULLIE:
Well, yes.
MR. LILLIAN:
And if you don't hear from him what kind of effect would that have on your evaluation of this case. Would you believe that he had failed in some fundamental way in his responsibility or whatever you may think he has towards society?
MS. PULLIE:
No, he has the right and I would respect that right. I would like to hear from him, but until all the facts are presented, I don't know how it would really affect me. I'm saying I don't think it would.
MR. LILLIAN:
So, have you decided or can you decidewhat you say is that you cannot tell or you cannot assure me and this Court that you could follow the law and give a fair and impartial hearing to Arthur Jackson if he does not testify?
MS. PULLIE:
No, I believe that I could be impartial. I'm saying that I would like to hear from him, I would like to hear his side.
MR. LILLIAN:
From his own lips?
MS. PULLIE:
Yes, but I don't think that would stop me from being fair and impartial.
The defense challenged Ms. Pullie for cause, which was rejected by the trial court. The defense then excused Ms. Pullie on a peremptory challenge.
On appeal, the defendant argues that Ms. Pullie's voir dire responses evidenced her inability to render an impartial verdict. However, an evaluation of Ms. Pullie's responses in their entirety leads to the same conclusion reached by the trial judge. Ms. Pullie's initial comments, which appeared somewhat equivocal regarding her impartiality were later clarified by defense counsel to show that she was capable of acting as an impartial juror without prejudging any issue. State v. Heard, supra. The trial judge did not, therefore, abuse his discretion in refusing to excuse this prospective juror for cause. State v. Wiggins, supra.

2. Prospective Juror Scott.

After both the prosecution and the defense had accepted Ms. Scott as a juror, she asked to approach the bench. She then expressed concern about jury service because of a molestation incident involving her young daughter. On further questioning, the trial court elicited the following:
THE COURT:
Apparently this is a grown person, the victim in this case. She is perhaps around your age. And the state is alleging that it is aggravated rape. The bottom line, the question is if you could sit here and hear the evidence in this case and decide this case only on the evidence you hear and not be influenced by what happened to your *737 daughter. Can you promise me that you would do that?
MS. SCOTT:
I think I can.
THE COURT:
Your thinking that you could is not good enough. The question is whether you could do that and not be influenced by what has happened to your daughter.
MS. SCOTT:
Yes.
THE COURT:
You would promise the Court that you would do that?
MS. SCOTT:
I think I could.
The defense moved for a mistrial; however, the trial judge refused a ruling on that motion because the jury had not yet been sworn. Defense counsel then noted an objection for the record.[2]
The comments and concerns first expressed by Ms. Scott to the trial judge appeared prejudicial to the defense. On further inquiry, however, Ms. Scott convincingly demonstrated to the judge that she would be able and willing to decide the case impartially, based on the law and evidence. The Louisiana Supreme Court has held that a prospective juror's bias can be removed by rehabilitation. State v. Bates, 397 So.2d 1331 (La.1981). The trial judge, who questioned Ms. Scott and observed her demeanor, concluded that she would act as an impartial juror, and there exists no evidence that the trial judge abused his discretion in reaching that conclusion. State v. Heard, supra; State v. Wiggins, supra.

3. Prospective Juror Fleming.

The defendant's final juror challenge relates to Paul Fleming, a retired police lieutenant with 16 years service on the New Orleans Police Department. During voir dire, Fleming stated he had investigated rape cases and also that he had testified, as a witness, in "over a hundred" trials. Fleming also stated that his experience as a police officer would not affect his ability to be fair and impartial.
Defense counsel challenged Mr. Fleming for cause on the basis of his career as a police officer. The trial judge indicated his satisfaction with Mr. Fleming's responses to defense questioning during voir dire and rejected the challenge for cause. The defense then exercised a peremptory challenge to remove Mr. Fleming from the jury panel.
The Louisiana Supreme Court has consistently held that service on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge; however, such association does not automatically disqualify a prospective juror. State v. Comeaux, supra; State v. Sylvester, 400 So.2d 640 (La.1981); State v. Madison, 345 So.2d 485 (La.1977). In dealing with this issue, the Fifth Circuit has observed that "[t]he question to ask is whether the juror can assess the credibility of each witness independent of his occupation. Such determinations are in the wide discretion of the trial judge." State v. Parker, 506 So.2d 675 (La.App. 5 Cir.1987) (citing State v. Smith, 430 So.2d 31 (La.1983)).
In the present case, defense counsel specifically asked Mr. Fleming if his prior employment as a police officer, who sometimes worked on rape cases, would influence his performance as a juror; and Mr. Fleming unequivocally replied that it would not, and that he would impartially evaluate the credibility of witnesses:
MR. LILLIAN:
Did you ever work on this kind of case, sir?
MR. FLEMING:
Yesthis is the first time I ever sat on a jury.

*738 MR. LILLIAN:
Not just sitting on a jury, but did you ever work on rape cases or anything along these lines?
MR. FLEMING:
Yes, sir.
MR. LILLIAN:
Would that influence your performance on this jury, sir?
MR. FLEMING:
Not at all.
MR. LILLIAN:
This isn't meant to insult police officers and as a matter of fact, it is exactly the opposite. But, I have to ask that question and I have to get that out in the open, because if a police officer gives evidence up here and we can show that other way of looking at it, that may be based upon a mistake that a police officer made, I want your word that you will give the benefit of the doubt to Arthur Jackson and not that police officer. Mr. Fleming, is that going to be difficult for you?
MR. FLEMING:
No, it won't.
Mr. Fleming had retired from the New Orleans Police Department at the time he was called to serve as a juror in this case. Moreover, the New Orleans Police Department was in no way connected with this case. The trial judge who observed Mr. Fleming and heard his voir dire responses was obviously impressed with the prospective juror's candor. There is no indication that the trial judge abused his discretion in refusing to excuse Mr. Fleming for cause. State v. Comeaux, supra; State v. Parker, supra.
Accordingly, we find no error in the trial court's refusal to excuse these three prospective jurors for cause.

EXCESSIVE SENTENCE
In his last assignment of error, the defendant challenges the legality of his sentence.
The trial judge imposed the mandatory sentence of life imprisonment for the defendant's aggravated rape conviction. LSA-R.S. 14:42 B. On the armed robbery conviction, the judge sentenced the defendant to serve 40 years at hard labor, without benefit of parole, probation or suspension of sentence. The sentence for armed robbery was ordered to be served consecutively to the aggravated rape sentence.
The defendant argues that this 40-year consecutive sentence for armed robbery is unconstitutionally excessive.
Article 1, Section 20 of the Louisiana Constitution prohibits the imposition of cruel, unusual or excessive punishment. Sentences are excessive if "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616, 625 (La. 1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985).
Sentences must be individually formulated for the offender as well as for the offense. State v. Studivant, 531 So.2d 539 (La.App. 5 Cir.1988). The trial judge is allowed wide discretion in imposing sentences within statutory limits. Absent manifest abuse of this broad discretion, a sentence should not be set aside. State v. Lanclos, 419 So.2d 475 (La.1982). The appellate standard for evaluating whether the trial judge has abused his discretion is whether the sentence imposed is grossly disproportionate to the severity of the offense. State v. Bonanno, 384 So.2d 355 (La.1980).
The sentencing range for armed robbery is imprisonment at hard labor for not less than five years and for not more than 99 years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64 B. In imposing the 40 year sentence for armed robbery, the trial judge reviewed the sentencing guidelines of LSA-C.Cr.P. art. 894.1 and concluded that imprisonment was necessary because of the undue risk that the defendant would commit another crime if placed on probation or given a suspended sentence. The judge also stated his conviction that the defendant required long term correctional treatment in the custodial environment of a prison, and he noted that any lesser sentence than that imposed would *739 deprecate the seriousness of the armed robbery offense. In addition, the trial judge observed that the defendant had one prior felony conviction and he specifically found that no mitigating factors existed with respect to sentencing. Next the judge emphasized that the defendant broke into the victim's home and robbed her at gunpoint, while threatening to harm not only her but also her minor son. Accordingly, we find that the sentencing reasons articulated by the trial judge amply support the 40-year sentence imposed on the defendant for armed robbery. State v. Scott, 573 So.2d 556 (La.App. 5 Cir.1991), writ denied, 577 So.2d 13 (La.1991); State v. Williams, 536 So.2d 773 (La.App. 5 Cir.1988).
The defendant further complains that the trial judge erred when he ordered the defendant's sentences to be served consecutively rather than concurrently.
Sentences for offenses arising out of a single course of criminal conduct generally are served concurrently instead of consecutively. LSA-C.Cr.P. art. 883. Nevertheless, consecutive sentences are not excessive per se. State v. Williams, 445 So.2d 1171 (La.1984). Particular justification is required to support consecutive sentences on convictions arising out of a single course of criminal conduct. State v. Avila, 550 So.2d 1374 (La.App. 5 Cir.1989), writ denied, 580 So.2d 664 (La.1991). This Court has consistently held that consecutive sentences are justified when, as in the present case, the record establishes that the offender poses an unusual risk to the safety of society. State v. Mayeaux, 570 So.2d 185 (La.App. 5 Cir.1990), writ denied, 575 So.2d 386 (La.1991); State v. Avila, supra; State v. Gaudin, 493 So.2d 234 (La.App. 5 Cir.1986), appeal after remand, 508 So.2d 594 (La.App. 5 Cir.1987). The trial judge, in stating his sentencing reasons, highlighted not only the brutality exhibited by the defendant in committing these offenses, but also the traumatic effect that the defendant's savage actions have left on the victim's life. Vicious crimes of this type mandate stern treatment. Accordingly, we find that the imposition of consecutive sentences in this case is justified.
This assignment of error lacks merit.

ERROR PATENT
Pursuant to LSA-C.Cr.P. art. 920, we have conducted an error patent review of the record on appeal. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) and note the following error.
The jury's verdict, which is reflected in the trial transcript, is not recorded on the minute entry for the trial. When a discrepancy between the minutes and the transcript exists, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983).
It is therefore ordered that the minute entry of October 4, 1991 in this matter be amended to reflect the jury's verdict.
We find no other errors patent in this record.
For the above discussed reasons the defendant's convictions and sentences are affirmed and it is ordered that the trial court amend the minute entry of October 4, 1991 to reflect the jury's verdict in this case.
AFFIRMED WITH AMENDING ORDER.
NOTES
[1] A statement may be an oral or written assertion, or nonverbal conducted intended as an assertion. LSA-C.E. 801 A.
[2] The defendant did not formally challenge this juror for cause, as required by LSA-C.Cr.P. art. 800 A. Nevertheless, considering the unusual nature of this situation arising after the juror had been accepted by both sides, the defense's objection for the record should suffice for substantial compliance with Article 800 A, thereby preserving this matter for review. State v. Vanderpool, 493 So.2d 574 (La.1986).