782 So.2d 1045 (2001)
STATE of Louisiana
v.
Christine HAMPTON.
No. 00-KA-1002.
Court of Appeal of Louisiana, Fifth Circuit.
January 23, 2001.
*1047 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, George C. Wallace, Assistant District Attorneys, Gretna, LA, Counsel for the State of Louisiana.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Counsel for appellant.
Court composed of Judges GRISBAUM, DUFRESNE, and McMANUS.
McMANUS, Judge.
In this criminal matter, Defendant Hampton appeals her conviction for theft. We affirm Defendant's conviction and sentence and remand the matter in order for the trial judge to conduct a hearing on the validity of Defendant's waiver of her right to a jury trial and in order for correction of patent errors.

STATEMENT OF THE CASE
Christine Hampton, Defendant herein, was charged by bill of information with theft of goods greater than $500 from Dillard's Department Store (Dillard's), in violation of LSA-R.S. 14:67.10. She pled not guilty. After several continuances a bench trial was held on December 15, 1999. Prior to trial Defendant's motions to suppress the evidence and Defendant's statement were heard and the motions were denied. The trial judge returned a verdict of guilty as charged. The trial judge sentenced Defendant pursuant to LSA-C.Cr.P. art. 893[1] to two years at hard labor; suspended the sentence and placed Defendant on active probation for two years, imposing a fine of $400.00, costs, and commissioner's fees to be paid over the period of probation. Defendant timely appealed.

FACTS
Deputy Kenneth Norris[2] was working a detail at Dillard's, located at the Clearview Mall, when he observed several individuals shoplifting at approximately 8:30 p.m. on May 28, 1999. While in the camera room, he observed Defendant and three persons enter the store together and stop at the front door. Three members of the group walked into the "Junior's" section and Defendant stopped near the corner of that section. He saw juvenile members of the group roll up clothing articles and hide *1048 them. One of these individuals, identified as C.C.,[3] wore a blue shirt and carried a brown bag.
He saw Defendant roll up some items, and, accompanied by a juvenile, exit the store without paying. Defendant took numerous pairs of rolled up shorts. Once Defendant left, the officer watched the other two individuals. He saw two additional individuals approach C.C., who continued to conceal items in a brown bag. These individuals appeared to be engaged in conversation.
The second group of individuals began concealing items in a bag. They grabbed a number of items, went into a dressing room, and exited the room with fewer items than they had carried in.
The new group met with C.C. They exited. The deputy followed and intercepted two suspects who left with stolen merchandise. They immediately pointed to a truck located on the Clearview side of the store. A female suspect told him a girl ran out of the store, jumped in the back of the truck, and lay in the bed of the truck. He saw Defendant standing on the driver's side of the truck. The truck's door was opened on that side. The manager stepped outside with the deputy. The deputy told the manager to watch the two female subjects he detained in order for the deputy to investigate the one suspect in the truck. He noted that two juveniles avoided capture.
When Norris approached the truck, Defendant proceeded across Clearview toward a Chevron station. The deputy was approximately 20 to 30 feet from Defendant when Defendant left the vehicle.
The deputy continued toward the truck and observed someone lying in the bed of the truck along with articles of clothing. He did not see who placed the items in the cab of the truck. He discovered a juvenile lying in the bed of the truck with Dillard's clothing in open view, all along the bed of the truck. He also found the female juvenile, identified as T.T., who accompanied Defendant when Defendant exited, seated in the front seat of the truck. All of the clothing had Dillard's price tags with Dillard's skew numbers. The juveniles had the majority of the merchandise.
T.T., the juvenile seated in the truck, was the same person he saw accompanying Defendant as she entered and who exited with Defendant and clothing they did not pay for. Inside the truck he also found clothing, which was identified and tagged. Shorts, resembling the items that Defendant rolled up, were on the floorboard in the truck. It was stipulated the officer could not testify that the shorts were the same shorts he saw Defendant roll up in the store.
He found a photographic I.D. on the front seat, the driver's side, belonging to Defendant. This was the same person he saw roll up clothing and walk out without paying as well as the same person he saw leave the truck as he approached.
He explained he saw Defendant roll items up, step behind some clothing racks and walk out the door without purchasing the items. If she had dropped them he would have seen the items hit the ground. As she passed the rack she apparently concealed the shorts. The juvenile was standing next to her. It appeared that Defendant rolled up the clothes and tucked them like a football under her arm.
He arrested the two juveniles, C.C. and T.T., whom he saw stealing, and brought them to the Security Office. He had the truck seized.
*1049 The deputy subsequently learned Defendant drove to the store. The juveniles were taken to lock-up. At lock-up the deputy was informed there was someone present looking for two juveniles who were arrested, but the names did not coincide with the correct names of the two arrestees. Instead, the names were the incorrect names originally given by the two juveniles to the officer. He saw and recognized Defendant. He approached her, and identified himself. She told him she was "Keeva's" aunt and was picking her up. He told Defendant he had no one by that name, but she could accompany him to see the juveniles. She pointed out her niece. That juvenile shook her head to indicate Defendant was not her aunt. The deputy pointed to the other juvenile and Defendant identified this one as her niece.
The deputy asked Defendant whether her name was "Christina" and she identified herself as Defendant.
The officer advised her of her rights and that she was under arrest. He searched her and found a set of keys for a Toyota truck. She denied owning or driving a Toyota pick-up truck. He also seized a paper from her, which had the telephone number of the Chevron across the street from Dillard's.
He learned the truck belonged to another person. The owner called the deputy and asked for the key to the vehicle. He also said Defendant had the vehicle. The deputy identified State's Exhibit Number 2 as a photograph he took that evening showing clothing removed from the truck, from the bag in the truck, which was carried out by one of the juveniles, and clothing from inside the truck. The total value of the merchandise was $997.00.
Once under arrest, and before the deputy picked up the I.D. and asked whether it was her I.D., Defendant looked at the I.D. and said, "I'm sorry." The officer also testified that when he told her he thought she was lying, she said, "I'm sorry."
The parties stipulated that Defendant did not appear in the two videotapes that were seized from video cameras in Dillard's.
The State offered a stipulation that should Bonnie Skaggs, an employee of Dillard's, testify, she would testify that the value of the goods in question totaled $997.00 based upon the face amount of the merchandise tags which were located on each item seized in connection with the investigation, exclusive of sales tax. Defense counsel had no objection to the stipulation subject to his examination of the witness regarding the sales tax. Skaggs testified on cross-examination that she, the area Sales Manager, totaled the items and calculated the value, exclusive of sales tax. Shorts were among the items taken.
The State introduced into evidence State's Exhibits Numbers 1 and 2, which were identified during the course of the motion hearing. Defense Exhibits Numbers 1 and 2, consisting of pages three and four of the police report, used to refresh the officer's memory, were proffered.
Defendant testified as follows. She was at Dillard's seeking to purchase a birthday present for her nine-year-old daughter. She went to the store with C.C. and T.T., C.C.'s friend. Before going to the store she dropped her boyfriend off at work. The truck belonged to her boyfriend. Next, she shopped at Lakeside, but found nothing. She decided to go to Clearview. While at Lakeside, she saw girls she knew. One of the girls asked for a ride to New Orleans and she agreed, informing her that she had to go to Clearview first. It is unclear whether the girl accompanied her at that time.
Defendant went to Dillard's and shopped at other stores in the mall as well as a *1050 shoe store where she purchased a pair of sandals for her daughter. Defendant also testified she purchased sandals at a store on Veterans before going to Clearview, but did not know what had become of the sandals. She stated the girls were with her when she went to the shoe store. The State asked Defendant about the discrepancy in her testimony in which she stated she dropped the girls and then she went to Clearview to get sandals. Defendant denied making that statement. She stated that she purchased the sandals before she went to Dillard's.
She denied being at the truck as the officer approached. The girl at the Chevron gave her the telephone number for the taxi and the telephone number of Chevron. She denied Chevron was a pre-arranged location to meet the girls.
She entered Dillard's, turned around, and walked out. After she finished shopping at other stores, she returned to Dillard's to look for the girls. She did not look at any merchandise in Dillard's and did not locate the girls. She returned to the mall to search but could not locate them. She returned to the truck.
She saw one of the girls sitting in the truck. Defendant asked where "Christina went" and the girl told her Christina was in the store. Defendant approached the store and spotted the deputy leaving the store. She observed the deputy speaking to other girls whom she did not know. She entered the store but did not find the girl. She asked someone in the store whether the individual had seen the girl and that person responded negatively. Defendant left the store through another entrance, and when she came around the store she saw police officers and the manager near the truck. The truck was surrounded and the police had their guns drawn on the girls.
Defendant "freaked out." She was scared because the guns were drawn. She did not know what to do. She went across the street and called her boyfriend. Then she caught a taxi to go to the girls' house. It was then she realized she had done nothing wrong. She changed her mind and went to the police station instead to see what happened. She told the police they arrested two girls at the mall and defendant was responsible for them because they went to the mall with her. She told the officer one of the girls was named "Christina" but that she did not know the name of the other girl. She had no idea the girls were stealing or that they were going to the mall for the purpose of stealing. Defendant denied stealing anything from Dillard's.

ASSIGNMENT OF ERROR NUMBER ONE
As her first assignment of error, Defendant asserts that the evidence on the issue of value was insufficient to support the verdict.
Defendant concedes that viewing the evidence in the manner most favorable to the prosecution, one could conclude the State proved beyond a reasonable doubt that she stole property having some value. However, defendant argues the value of the stolen property attributable to her was not specified.
Defendant notes that the deputy did testify that the majority of the stolen items were taken by the juveniles. Thus, since $997.00 was the total value, Defendant would have only taken a value of less than $500.00.
However, the State argued below, and does now, that Defendant was a principal. Thus, the State asserts it was not required to separately prove the amount of the merchandise stolen by Defendant individually.
*1051 In reviewing challenges to the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308, 1309 (La.1988).
A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the fact-finding function of the jury only to the extent necessary to assure that the defendant has received due process of law. State v. Bordenave, 95-2328, p. 2 (La.4/26/96), 678 So.2d 19, 20 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789). It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in Jackson. State v. Rosiere, 488 So.2d 965, 968 (La.1986) (and the cases cited therein).
LSA-R.S. 15:438 provides that when evidence is circumstantial, the applicable rule is that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." In Rosiere, 488 So.2d at 965, 968, the Louisiana Supreme Court explained:
This is not a purely separate test from the Jackson sufficiency standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden.
In considering the role of the fact finder, this Court in State v. Pascual, 98-1052, p. 6 (La.App.5 Cir.3/30/99), 735 So.2d 98, 101 (citation omitted) explained:
It is the role of the fact finder to determine the weight of the evidence and the jury may accept or reject, in whole or in part, the testimony of any witness. The appellate courts may not second-guess the jury's rational credibility determinations.
Defendant was convicted of theft of a value greater than $500.00. The offense is defined in LSA-R.S. 14:67.10, which states in pertinent part as follows:
A. Theft of goods is the misappropriation or taking of anything of value which is held for sale by a merchant, either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking is essential[.]
. . . .
B. (1) Whoever commits the crime of theft of goods when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years or may be fined not more than three thousand dollars, or both.
In order for Defendant's conviction to be upheld on appeal, the State must have proven the following essential elements beyond a reasonable doubt: (1) that Defendant misappropriated or took; (2) a thing *1052 of value; (3) which is held for sale by a merchant; (4) either without the consent of the merchant to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations; and (5) that Defendant had the intent to deprive the merchant permanently of whatever may be the subject of the misappropriation or taking.
In State v. Bourg, 470 So.2d 291, 296 (La.App. 5 Cir.1985), (citations omitted), this Court explained that:
The state must further prove the value of the stolen property, for upon this proof depends the determination of the severity of the theft, and the punishment for a convicted offender.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. LSA-R.S. 14:24.
"[A]n individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state." State v. Pierre, 93-0893, p. 4 (La.2/3/94), 631 So.2d 427, 428. Mere presence at the scene is therefore not enough to "concern" an individual in the crime. Pierre, 93-0893 at 4; 631 So.2d at 428.
Theft is a specific intent crime. State v. Johnson, 368 So.2d 719, 721-722 (La.1979). Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741, 751 (La.1982). Specific intent need not be proven as fact but may be inferred from the circumstances and actions of defendant. State v. Maxie, 93 2158, p. 11 (La.4/10/95), 653 So.2d 526, 532. Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer guilty conscience. State v. Fuller, 418 So.2d 591, 593 (La.1982).
As previously noted, it is not the function of an appellate court to assess credibility or reweigh the evidence. This Court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia.
Considering the trial judge's credibility determination in according greater weight to the officer's testimony, a review of the record reveals both direct and circumstantial evidence that Defendant, in addition to stealing some of the items, could be viewed as the getaway driver for the theft, thereby aiding and abetting the juveniles. The stolen articles were in plain view all along the bed of the truck and Defendant, who drove the truck to the location, was seen near the truck's opened driver's side door when the officer approached. She responded by fleeing the scene. Although she subsequently went to the police station, her initial response was to abandon the juveniles for whom she admitted she was responsible. The trial judge found it unusual Defendant left the scene, even considering her version of the incident, in which she asserted that the police detained the juveniles at gunpoint, since Defendant could have removed herself to a safer distance instead of leaving the vehicle and the juveniles. Thus the trial judge could have inferred from the circumstances that Defendant fled in an attempt to avoid apprehension because of a guilty conscience.
Further evidence supporting Defendant's aiding and abetting the juveniles is the following. She accompanied the juveniles *1053 into Dillard's; she and the juveniles rolled up items and hid them; she and T.T. left the store together with stolen items; and T.T. sat in the front seat of the truck with stolen items, while another juvenile lay in the bed of the truck with stolen items, in plain view.
As in State v. Herrera, 98-677, p. 7 (La.App.5 Cir. 2/10/99), 729 So.2d 75, 78-79, the circumstances of the crime evidently led the trial judge to believe that defendant was not an innocent bystander regarding the entire amount of stolen goods in the truck. Compare State v. King, 520 So.2d 1260, 1267 (La.App. 5 Cir.1988), in which the defendant's presence, combined with the fact that articles taken from a trailer were found in defendant's truck and in defendant's pocket, supported a finding defendant was a principal to unauthorized entry of the trailer and removal of property from the trailer.
We do not see any error in the trial judge's finding that Defendant is guilty of theft in this matter.

ASSIGNMENT OF ERROR NUMBER TWO
As her second assignment of error, the Defendant asserts that the trial court erred in permitting her to proceed to trial before the judge without obtaining a waiver of her right to a trial by jury.
Defendant was charged with, and convicted of, theft of goods valued at greater than $500.00. LSA-R.S. 14:67.10B provides in part for a sentence of not more than 10 years with or without hard labor, thus requiring trial before a jury composed of six persons. LSA-C.Cr.P. art. 782; La. Const. art. 1, § 17. Since the offense is not punishable by death, a defendant may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. LSA-C.Cr.P. art. 780A. Further, Article 780A requires that a defendant be informed of the right to trial.
The minutes of the arraignment do not reflect Defendant was informed of her right to a jury trial. The record does not contain a transcript of the arraignment held on July 12, 1999. None of the minute entries thereafter indicate Defendant was advised of her right to a jury trial and that she waived the right.
The transcript contains a preliminary discussion of pre-trial issues prior to the first witness, and refers to a bench conference. However, there is no indication Defendant was advised of her right to a jury trial at this time and that she waived the right.
After the trial judge denied the suppression motions, defense counsel stated Defendant was ready for trial. A bench trial then proceeded with no mention of this right.
On appeal, defense and the State agree that the record does not clearly reflect an affirmative waiver of this right.
Waiver of the right to a jury trial is never presumed. State v. McCarroll, 337 So.2d 475, 480 (La.1976).
In State v. Nanlal, 97-0786, p. 1 (La.9/26/97), 701 So.2d 963, 963, the Louisiana Supreme Court enunciated a procedure under which the case was remanded to the trial court for an evidentiary hearing on the question of whether the defendant had validly waived the right to a jury trial. The court held that if the evidence showed defendant did not make a valid waiver the trial court must set aside the conviction and sentence and grant defendant a new trial. Defendant's right to appeal any adverse ruling of the waiver issue was reserved. Accord, Herrera, 98-677 at pp. 10-11, 729 So.2d at 80.
The Nanlal Court cited with approval State v. Bissett, 451 So.2d 181 (La.App. 1 *1054 Cir.1984). 97-0786 at 1, 701 So.2d at 964. In Bissett, the record was silent regarding a waiver and the court remanded the case for an evidentiary hearing on the waiver issue. However, there, defendant raised sufficiency and an evidentiary ruling in addition to the waiver issue. The court addressed the merits of all claims, affirmed the conviction, vacated the sentence on one count and remanded the case for an evidentiary hearing on the waiver issue. 451 So.2d at 182, 185.
Similarly, this Court, in State v. Pierre,[4] 98-1123, p. 9 (La.App.5 Cir.4/14/99), 733 So.2d 674, 679 addressed sufficiency and the excessiveness of sentence, conditionally affirmed the conviction and sentence and remanded for an evidentiary hearing on the waiver issue.
Therefore, since we cannot presume a waiver of this right from the silent record, we are compelled to remand the matter, and will adhere to the procedure set out in Pierre, instructing the trial court to conduct an evidentiary hearing solely to determine whether or not Defendant affirmatively waived her right to a jury trial.

ASSIGNMENT OF ERROR NUMBER THREE
As her final assignment of error, Defendant asks us to review the record for any patent errors.
The record was also reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). The following patent errors were disclosed.

LSA-C.Cr.P. art. 930.8
The trial judge failed to inform Defendant she has two years[5] "after the judgment of conviction and sentence has become final" to file post-conviction relief, although the amended commitment/minute entry reflects she was so informed.[6] LSA-C.Cr.P. art. 930.8A. See, State v. Williams, 98-651, pp. 13, 14 (La.App. 5 Cir.2/10/99), 729 So.2d 14, 22. As we can only conditionally affirm the conviction and sentence here, during the proceedings on remand, after the evidentiary hearing, if a jury trial was validly waived, the trial court shall at this time inform Defendant of the provisions of LSA-C.Cr.P. art. 930.8C, and shall order that the record in this matter reflects such notice. See State v. Pierre, 98-1123 at 9, 733 So.2d at 679.

Discrepancy Between Commitment/Minute Entry and Transcript
The amended commitment/minute entry recites the State agreed not to file a multiple bill. The sentencing transcript does not reflect the agreement. Instead, the transcript reflects Defendant had no prior conviction and had been originally offered a suspended sentence if she entered a plea of guilty. The transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, during the proceedings on remand, we instruct the trial court to amend the commitment/minute entry so that it conforms to the transcript. See, e.g. State v. Jackson, 96-661 (La.App.5 Cir.4/9/97), 694 So.2d 440; State v. Jackson, *1055 601 So.2d 730, 739 (La.App. 5 Cir. 1992).
For the above reasons, the conviction and sentence are conditionally affirmed, and we instruct the trial court to conduct an evidentiary hearing on the issue of whether Defendant executed a valid waiver of her right to a jury trial. In addition, if the trial judge makes an affirmative finding on this issue, the above noted patent errors shall be corrected so that the record reflects proper notice of the delays in which to file an application for post conviction relief, and so that the commitment accurately reflects the sentencing transcript.
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; HEARING ORDERED ON ISSUE OF VALID WAIVER OF JURY TRIAL.
NOTES
[1] The article provides for suspension and deferral of sentence and probation in certain felony cases.
[2] The State asked the court to adopt the deputy's testimony presented at the suppression hearing. Defense counsel did not object, but requested further cross-examination of the officer during trial. The trial judge agreed.
[3] Initials are provided for the names of the juveniles.
[4] The State requests that this Court follow the procedure outlined in Pierre.
[5] The article was recently amended by 1999 La. Acts No. 1262, effective August 15, 1999, after defendant was sentenced on March 13, 2000, to provide for a two-year prescriptive period.
[6] The transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). It is noted the trial judge did not inform defendant of the appeal delay as recited in the commitment/minute entry; however, defendant orally moved to appeal after sentence was imposed.